**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 3 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

JOHN MARTIN,

     Plaintiff-Appellant,

v.

THE CITY OF DEL CITY and STAN J. GREIL, city manager, officially and individually,

     Defendants-Appellees.

No. 97-6336

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. CIV-96-1901-L)**

---

Frank E. Walta, Walta & Walta, Enid, Oklahoma, for Plaintiff-Appellant.

David W. Lee, Lee & Gooch, P.C., Oklahoma City, Oklahoma, for Defendants-Appellees.

---

Before **ANDERSON, HOLLOWAY** and **BALDOCK**, Circuit Judges.

---

**HOLLOWAY,** Circuit Judge.

---

     Appellant John Martin (Martin) brought suit for damages under 42 U.S.C. § 1983

in the United States District Court for the Western District of Oklahoma against

defendants-appellees City of Del City (Del City) and Stan Greil (Greil), Del City's City Manager. Martin alleged the defendants, by terminating Martin's employment, retaliated against Martin for exercising his right under the First and Fourteenth Amendments to petition the Del City government to seek a redress of grievances. The district court granted summary judgment for the defendants in an unpublished Order of August 29, 1997. Martin timely appealed and we have jurisdiction pursuant to 28 U.S.C. § 1291.

## I

### A

Martin was employed by Del City from 1990 until his termination on June 6, 1996. On August 14, 1995, Greil ordered Martin transferred from his position as supervisor of fleet maintenance to a planning technician position because Greil had received reports that Martin had sexually harassed a female city employee and a female employee of one of the City's suppliers. I Supp. App. at 36. Greil ordered the transfer because he wanted to remove Martin from the work area where the sexual harassment had occurred. Id. at 37.

Following the transfer, Martin filed an appeal of the transfer order with the Del City Civil Service Commission (Commission), pursuant to section 38 of the Del City Charter. Id. at 86-87. Section 38 provides that a city employee may appeal to the Commission any decision that terminates, suspends without pay, demotes or removes the employee. Id. at 61. Section 38 also entitles the appealing employee to a public hearing.

2

Id. at 61-62.

On October 10, 1995, Greil provided Martin a written statement of alleged reasons for his transfer, I App. at 53: (1) Martin had made sexually offensive remarks to a female employee which resulted in a complaint against the city to the E.E.O.C.; (2) Martin had made sexually offensive remarks, displayed sexually offensive behavior, and made unwanted sexual advances to a female supplier representative, as well as having made sexual remarks to female subordinates, including solicitations for sexual favors in exchange for pay checks and benefits; (3) Martin created and fostered unsatisfactory working relationships with other departments and divisions; (4) he improperly used city equipment; and (5) he engaged in insubordination by failing to serve on a policy review committee after being appointed to the committee. I App. at 57-59.

A hearing on Martin's appeal was scheduled for October 1995. However, a petition was filed in Oklahoma County district court, with an accompanying motion for a temporary restraining order, to enjoin the Commission from hearing Martin's appeal until a vacancy on the Commission could be filled. A state judge issued the T.R.O. I Supp. App. at 120-151.

On March 6, 1996, Martin and his attorney met with city officials, including Greil, to discuss a settlement of his employment dispute. The parties initially agreed to a settlement, effective March 6, 1996, that would pay Martin a lump sum to cover six pay periods, pay for any unused vacation and compensatory time, pay for unused accrued sick

leave, and pay for the March premium for Martin's medical plan plus a sum equal to five times the monthly cost of the premium.  Id. at 39.  At the same time, defendants placed Martin on administrative leave with pay.

However, the settlement was not finalized.  For the next two months, defendants submitted drafts of the separation agreement to Martin.  One draft, dated April 11, 1996, reduced the number of pay periods from six to four.[1]  Martin eventually rejected the settlement offer and returned to work on May 8, 1996.  I Supp. App. at 41.  On May 22, 1996, Greil gave Martin written notice of his contemplated termination and the setting of May 30, 1996, as the pre-termination hearing date.  I Supp. App. at 152-54.  The hearing was conducted on May 30 with Martin and his counsel in attendance.  Martin failed to present any evidence in his defense other than to deny the sexual harassment allegations. I Supp. App. at 155.  On June 6, 1996, Greil sent Martin a termination letter.  I Supp. App. at 156.  Martin was entitled to appeal his termination, but instead filed this suit.

**B**

Martin's complaint alleged this is a suit brought under the First and Fourteenth Amendments and the Civil Rights Act of 1871, 42 U.S.C. § 1983; that jurisdiction is conferred by 28 U.S.C. §§ 1331 and 1343; and that venue is proper pursuant to 28 U.S.C. § 1391(a), plaintiff's claims arising within this jurisdiction.  Martin avers he is a citizen of

---

[1]  Defendants claimed a credit for the sums paid to Martin while he was on administrative leave.

4

the United States and the State of Oklahoma, being a resident of Oklahoma County; that Del City is a charter city organized under Oklahoma law; and that defendant Greil is the city manager of Del City and was at all times related to this case acting under color of law.

The complaint avers this action seeks damages and other relief for deprivation of Martin's rights, privileges and immunities granted by the First and Fourteenth Amendments. He alleges he has been employed by Del City since September 1990. On August 17, 1995, the city transferred Martin from the position of supervisor of fleet maintenance to a planning technician position, a lower grade, and a demotion was thus imposed. On August 14, 1995, Martin had filed an appeal under Section 38 of the city charter.

Martin stated that on March 6, 1996 he and the city negotiated his separation from employment. He was placed on administrative leave with pay during the time the city drafted the agreement. The agreement was to provide for payment to Martin of six pay periods, 57.24 hours of accrued vacation time through March 6, 1996, and 356.30 hours of accrued sick leave. Martin alleged the city did not timely prepare the separation document and he remained on administrative leave with pay. On about April 11, 1996, the city prepared a document claiming credit for payments to Martin while on administrative leave. This reduced the pay periods to four payments. Martin disputed the city's entitlement to credit for salary paid while he was on administrative leave. The city

then notified Martin he had abused the grievance process and that if he did not execute the separation document as prepared, the city would terminate him. On June 6, 1996, Greil terminated Martin in accordance with the letter.

Martin averred that his exercise of rights under the city's grievance procedure, and his efforts to obtain the settlement agreement as negotiated, were guaranteed under the First Amendment; that defendants, acting under color of law, had punished Martin for exercising his constitutional rights and had deprived him of his rights, privileges and immunities secured by the Constitution, particularly his right of petition for the redress of grievances as guaranteed under the First Amendment. Martin prayed for compensatory damages, for punitive damages against Greil in his individual capacity only, for costs and attorney's fees. I App. at 1-4.

Defendants Greil and the city moved for summary judgment with an accompanying brief, attachments and exhibits. After review of these, the defendants' motion was granted for reasons given in a written order of August 29, 1997. I App. at 157-66. The judge found that none of Martin's allegations, even if true, amounted to a First Amendment violation; that such a claim involves the same analysis whether brought under the Free Speech Clause or the Petition Clause. He noted that Martin did "not seem to affirmatively dispute that his expression was in the nature of a private concern, but rather attempts to argue that the public concern test is inapplicable to his right of petition case." Id. at 162.

The judge disagreed and found that Martin's appeal through the grievance procedure was a matter of private concern, of interest only to him. Id. The judge also held that even if Martin could show that his expression was a motivating factor for the personnel action against him, the City had provided uncontroverted evidence of misconduct, particularly sexual harassment by Martin, showing by a preponderance of the evidence the City would have made the same decision to terminate Martin, regardless of the protected speech. Id. at 163.

For these reasons summary judgment was entered for defendants. This appeal followed.

II

We review the grant of a motion for summary judgment *de novo*. Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996); see also Wren v. Spurlock, 798 F.2d 1313, 1317 (10th Cir. 1986)(whether certain activity is protected by the First Amendment is a question of law to be determined by the court). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). Martin argues that the defendants violated his First Amendment right to petition the government for redress of grievances. In granting the defendants' motion for summary judgment the judge held that

7

Martin's "petition" did not touch upon matters of public concern.

## A.

Public employees do not surrender their First Amendment rights by virtue of their employment with the government. Connick v. Myers, 461 U.S. 138, 140 (1983); Keyishian v. Bd. of Regents, 385 U.S. 589, 605-06 (1967). But because the government has important interests in maintaining an efficient workplace and promoting the services that it renders, the government has an increased degree of discretion in regulating a public employee's speech. Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968).

The Supreme Court has adopted a multi-tiered test to determine whether a governmental entity may thus regulate a public employee's speech without offending the guarantees of the First Amendment. Schalk v. Gallemore, 906 F.2d 491, 494 (10th Cir. 1990). Our initial inquiry under this test is to determine whether the public employee's speech at issue touches upon matters of public concern. Connick, 461 U.S. at 146. If this is so, the court then must balance the interest of the public employee in making the statement against the government-employer's interest "in promoting the efficiency of the public services it performs through its employees." Pickering, 391 U.S. at 568.

If such balancing favors the plaintiff, he next must show that the constitutionally protected expression was a motivating factor in the adverse employment decision. Mount Healthy City Sch. Dist. v. Doyle, 429 U.S. 274, 287 (1977). Last, if the plaintiff satisfies the above elements, the burden shifts to the employer to show by a preponderance of the

8

evidence that it would have made the same employment decision "even in the absence of the protected conduct." Id.

**B**

Here, the district court held that Martin's conduct did not touch upon matters of public concern. The judge's Order stated that "plaintiff's appeal through the City grievance procedure was a matter of private concern, of interest only to him." I App. at 162. If Connick applies, then Martin's claim would arguably fail because his conduct did not touch upon matters of public concern. Martin however presents an intriguing question, arguing that his conduct constituted a petition for redress of grievances and that such petitioning, unlike other public employee speech, does not need to touch on matters of public concern to enjoy First Amendment protections. Martin's theory, which enjoys impressive support from some quarters, requires careful consideration.

The First Amendment protects, along with other modes of expressive conduct, the right to petition the government for redress of grievances. The Amendment provides in full:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble; and petition the government for a redress of grievances.

The term "petition" is not defined by the Constitution. However, we note at the outset that the First Amendment separates the Petition Clause from the Free Speech

9

Clause. The Supreme Court has interpreted the Petition Clause to apply in a variety of circumstances, noting the right to petition the representatives of the people in Congress, or to petition the executive branch, and the right of access to the courts. California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972)("The right of access to the courts is but one aspect of the right of petition.").

For reversal of the district court's summary judgment against him, Martin makes a vigorous assault on the basic reasoning of the court's Order. I App. at 157-66. Martin's central proposition on appeal is that the "District Court erred in holding that the First Amendment's Petition Clause requires that one's petition must comment upon a matter of public concern or be linked with another First Amendment right," Brief in Chief at 7, to qualify for protection under the Amendment. Martin contends that lawsuits and grievances directed at a government employer or its officials are "petitions" within the protection afforded by the Petition Clause, saying "[s]ubmissions of this sort purport to invoke the formal mechanisms for the redress of grievances," citing San Filippo v. Bongiovanni, 30 F.3d 424, 439 (3d Cir. 1994), cert. denied, 115 S.Ct. 735 (1995). Martin objects to the application here of the statement in McDonald v. Smith, 472 U.S. 479, 485 (1985), that "there is no sound basis for granting greater constitutional protection to statements made in a petition to the President than other First Amendment expressions," arguing that McDonald v. Smith is distinguishable because it simply held in a suit for defamation that the Petition Clause does not provide absolute immunity from damages for

libel.  Brief-in-Chief of Appellant at 8.

We are not persuaded by Martin's argument seeking to escape the "public concern" requirement.  In dealing with a government employee's claim alleging retaliation for exercise of her First Amendment rights, the Court relied on the "public concern" requirement in Connick v. Myers, stating:

> We hold only that when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the most appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in retaliation to the employee's behavior.

461 U.S. 138, 147 (1983)(emphasis added).  In McDonald v. Smith, as Martin points out, the Court rejected a claim of absolute immunity, under the First Amendment, for statements in a letter to a Presidential advisor and other federal officers in the Legislative and Executive branches.  The Court reasoned that:

> To accept petitioner's claim of absolute immunity would elevate the Petition Clause to special First Amendment status.  The Petition Clause, however, was inspired by the same ideals of liberty and democracy that gave us the freedom to speak, publish, and assemble . . . [t]hese First Amendment rights are inseparable, . . . and there is no sound basis for granting greater constitutional protection to statements made in a petition to the President than other First Amendment expressions.

McDonald, 472 U.S. at 485 (emphasis added).  The rationale was echoed in the concurring opinion in McDonald of Justice Brennan, joined by Justice Marshall and Justice Blackmun: "The Framers envisioned the right of speech, press, assembly, and petitioning as interrelated components of the public's exercise of its sovereign authority."

11

Id. at 489.

This court has applied these principles from Connick v. Myers and McDonald v. Smith in deciding First Amendment claims asserted by a public employee, who had claimed violations of her right to freedom of speech, freedom of association, and to petition for redress of grievances. See Schalk v. Gallemore, 906 F.2d 491, 494, 497-98 (10th Cir. 1990). In Schalk, a municipal hospital employee brought suit for wrongful discharge, averring that she had been concerned about waste, inefficiency and favoritism at the hospital, as spelled out in a lengthy letter to hospital board members and the city council of Wellington, Kansas. Schalk's freedom of speech claim was analyzed under Connick, and we held that Schalk's letter and comments to a board member did "constitute speech touching upon matters of public concern." Id. at 495. We then held that the "association" that Schalk sought was "nothing more nor less than an audience for her speech." Id. at 497. Therefore it had to "collapse into the foregoing discussion regarding her right to free speech." Id.

We turned then to Schalk's claim that her First Amendment right to petition was infringed. We held that:

> Schalk's right to petition is inseparable from her right to speak. As such, we see no reason to subject this claim to a different sort of analysis. See McDonald v. Smith, 472 U.S. 479, 482 . . . (characterizing right of petition as 'an assurance of a particular freedom of expression'); Day v. South Park Independent School Dist., 768 F.2d 696 (5th Cir. 1985)(right to petition is governed by 'public concern' analysis in Pickering), cert. denied, 474 U.S. 1101 (1986).

Schalk, 906 F.2d at 499.

12

We thus held that the "public concern" test applied to Schalk's claim under the Petition Clause and that the test was met by Schalk. We concluded that Schalk's speech in question was protected under the First Amendment, but that defendant Gallemore was entitled to qualified immunity from liability for damages individually; we remanded for further proceedings on his immunity in his official capacity. Id.

We have considered the scholarly opinion of Judge Pollak for the Third Circuit in San Filippo v. Bongiovanni, 30 F.3d 424 (3d Cir. 1994). In San Filippo, the plaintiff brought a § 1983 claim, alleging he had been retaliated against by his government employer for filing grievances and bringing a libel action in state court against University administrators. The Third Circuit held that summary judgment in favor of the government employer on grounds that the plaintiff's "petitioning" did not touch upon matters of public concern was error. San Filippo discussed in detail a critical distinction the Third Circuit made concerning San Filippo's claim. The opinion noted that where alleged retaliation is based on expressive conduct constituting speech, "a court must first determine whether or not the speech can be fairly characterized as addressing a 'matter of public concern' . . . ." Id. at 434. San Filippo's distinction follows: "But San Filippo's expressive conduct was not limited to speech. It included the filing both of lawsuits, and also a grievance under a collective bargaining agreement, against the University and University officials, activities that implicate the petition clause, rather than the free speech clause, of the First Amendment." Id. at 434-35 (emphasis added). The San

13

Filippo majority reasoned that: ". . . we believe that there is an independent reason – a reason of constitutional dimension – to protect an employee lawsuit or grievance if it is of the sort that constitutes a 'petition' within the meaning of the first amendment." Id. at 441-42.[2] San Filippo vacated the grant of summary judgment in the University's favor on San Filippo's first amendment claim.

This thoughtful analysis demonstrates the difficulty of the question before us. We are, however, persuaded by Judge Becker's dissent in San Filippo to "adopt the position of the seven other circuits which hold that a public employee plaintiff who has 'petitioned' is in no better position than one who has merely exercised free speech." Id. at 449; see San Filippo, 30 F.3d at 440 n.19 and cases there cited. And, we note, that such other First Amendment claims must meet the "public concern" test.

San Filippo noted our Schalk v. Gallemore opinion, discussed above, saying that we had encountered difficulty in drawing a meaningful distinction between the speech in the "petition" at issue in Schalk and other employee speech. Of course, this panel must

---

[2] The San Filippo opinion also reasoned that when a government employer "formally adopts a mechanism for redress of those grievances for which government is allegedly accountable, it would seem to undermine the Constitution's vital purposes to hold that one who in good faith files an arguably meritorious 'petition' invoking that mechanism may be disciplined for such invocation by the very government that in compliance with the petition clause has given the particular mechanism its constitutional imprimatur." San Filippo, 30 F.3d at 427-28. Implicit in the reasoning is the proposition that a petition which requires a government response inherently implicates the public concern. See id. at 442 (stating that if the Government could freely discharge an employee, who brings a non-sham claim against the government, for invoking a government-sponsored mechanism for redress of grievances, the "petition clause would be a trap for the unwary.").

14

follow Schalk's holding, there being no intervening Supreme Court opinion and no en banc ruling by our court changing Schalk's application of the principles relating to the Petition Clause, the Free Speech Clause and the right of association provision of the First Amendment.

The district judge's order in the instant case noted that Martin "does not seem to affirmatively dispute that his expression was in the nature of a private concern." I App. at 162. We agree with that observation and note that the thrust of Martin's appeal is to challenge the application here of the "public concern" requirement, relying on the San Filippo opinion.

We noted earlier that Martin claims error in addition to the enforcement of the "public concern" requirement under the Petition Clause because of a violation of a right which Martin claims is "linked with another First Amendment Right." Brief in Chief of Appellant at 7. We find no developed argument which is presented on the latter theory. There is only a vague allusion to Martin enjoying a "property interest in his employment," id. at 14. The vague theory is wholly unpersuasive and requires no further discussion.

We are persuaded that Schalk and other authorities on the Petition Clause we have considered adequately support the summary judgment entered here in favor of the defendants. Accordingly that judgment is

**AFFIRMED**.

15