**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**September 21, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

NORMAN T. MERKEL,

      Plaintiff - Appellant,

v.

FERNANDO ABEITA; NICHOLAS
GARCIA,

      Defendants - Appellees.

No. 04-2156
(D. New Mexico)
(D.Ct. No. CIV-02-1596 JB/LAM)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **BRISCOE**, **HARTZ**, and **O'BRIEN**, Circuit Judges.

_____

Norman Merkel was a pilot with Pierce Aviation, Inc., a contractor for the

United States Bureau of Indian Affairs (BIA). Pierce Aviation reassigned Merkel

after Fernando Abeita and Nicholas Garcia, two BIA contracting officers,

complained about inappropriate behavior. Merkel then resigned. He sued Abeita

and Garcia, alleging a violation of his First Amendment rights to freedom of

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

speech.[1]  Specifically, Merkel contended Abeita and Garcia fabricated information about his actions in retaliation for his statement that he would file a report alleging unsafe flying conditions.

Abeita and Garcia moved to dismiss the case on the basis of qualified immunity.  The district court treated the motion as one for summary judgment, considering declarations and a portion of Merkel's deposition in addition to the pleadings.  The district court granted summary judgment for Abeita and Garcia and dismissed the case with prejudice.  Merkel appealed.  We AFFIRM.

Background

In 2000, the BIA contracted with Pierce Aviation to provide single engine airtanker services for the BIA's firefighting efforts in New Mexico and Arizona. In April 2002, Pierce Aviation hired Merkel as a pilot and in May, stationed him in Ruidoso, New Mexico.  Abeita was the BIA Contracting Officer's Representative stationed in Albuquerque and Garcia was the BIA Contracting Officer's Technical Representative in Ruidoso.

During the afternoon or evening of June 3, 2002, Merkel and Garcia had a conversation during which Merkel expressed his extreme dissatisfaction about the number of hours he was working.  According to Garcia, Merkel used abusive

---

[1] Merkel also sued Pierce Aviation, its President and CEO, James O. Pierce, and its employee, Kinney McKinney.  These defendants were dismissed with prejudice pursuant to stipulation.

language. Merkel then said he was considering filing a "Safecom" report because he believed the number of hours pilots were required to be on "ready" status was unsafe and endangered the entire operation.[2] Merkel flew an air support mission later that same evening and complained to Garcia about the overtime work, again using abusive language. Merkel denies ever using abusive language with Garcia.

The next morning, Merkel, who was still upset, approached Garcia and again "was personally abusive." (Appellant's App. at 52.) Garcia, having already called Abeita the night before to report Merkel's conduct, made a second call after the June 4 morning confrontation. Abeita in turn called a representative of Pierce Aviation, Kinney McKinney, to express concern about Merkel's behavior and its impact on the safety of the operation. Abeita opined that stress might be causing Merkel's behavior. Abeita assured McKinney he had no authority to specify what action Pierce Aviation should take and his only concern was the operation's safety.

When Abeita called back to inform Garcia of his conversation with McKinney, Garcia related yet another incident which had occurred that same morning. A fire alert had been received, and two pilots, Merkel and Carl Irelend, were dispatched to provide air support. Irelend left at 8:04 a.m., but Merkel

---

[2] "A 'Safecom' report is a form used by the United States Forest Service, Fire and Aviation Management . . . 'to report any condition, observance, act, maintenance problem, or circumstance which has the potential to cause an aviation-related mishap.'" (Appellant's App. at 12.)

remained on the ground for another fifteen to twenty minutes, walking around his plane and apparently talking to it. Merkel departed at 8:23 a.m. Garcia was very concerned about the delay in takeoff because every minute counts during a fire suppression operation. Merkel contends this time was spent in a routine pre-flight inspection.

That afternoon, McKinney called Abeita to inform him he had spoken with Merkel and they had agreed to give Merkel some time off, and to use him as a relief pilot. This met with Abeita's approval. However, Merkel perceived the reassignment as a demotion and resigned from his job.

Merkel sued Abeita and Garcia pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), alleging a violation of his First Amendment rights to freedom of speech. Specifically, he alleged Abeita and Garcia conspired to manufacture allegations that he had used rude and abusive language and engaged in unsafe behavior, in retaliation for Merkel's comment that he might file a Safecom report. He further contended Abeita and Garcia transmitted those allegations to McKinney, leading to an adverse employment action — his reassignment to relief pilot.

Abeita and Garcia filed a motion to dismiss based on qualified immunity. Because both parties attached declarations and other exhibits to their briefs on the motion, the district court treated it as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. After a hearing, the court granted summary

judgment in favor of Abeita and Garcia, finding they were entitled to qualified immunity because Merkel did not establish any of the elements of a First Amendment claim. Of singular import is the district court's conclusion that Merkel failed to demonstrate how his speech touched on a matter of public concern.

## Discussion

We review a grant of summary judgment based on qualified immunity *de novo*, applying the same legal standard used by the district court. *Lawmaster v. Ward*, 125 F.3d 1341, 1346 (10th Cir. 1997).

> In cases involving the First Amendment, the de novo standard is appropriate for the further reason that in cases raising First Amendment issues an appellate court has an obligation to make an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression.

*Horstkoetter v. Dep't of Pub. Safety*, 159 F.3d 1265, 1270 (10th Cir. 1998) (quotations omitted).

Summary judgment is appropriate when "there is no genuine issue as to any material fact and [] the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "Conclusory allegations, however, do not establish an issue of fact under Rule 56." *Baker v. Penn Mut. Life Ins. Co.*, 788 F.2d 650, 653 (10th Cir. 1986). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which

that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

To prevail, Merkel had to establish the elements of a First Amendment violation. We utilize a multi-tiered approach in evaluating whether a public employee has demonstrated his employer infringed upon his speech rights:

> [T]he employee must show that (1) the speech in question involves a matter of public concern; (2) his interest in engaging in the speech outweighs the government employer's interest in regulating it; and (3) that the speech was a substantial motivating factor behind the government's decision to take an adverse employment action against the employee. If an employee proves these three factors, then he must prevail unless the employer proves by a preponderance of the evidence that it would have reached the same decision even in the absence of the protected conduct.

*Baca v. Sklar*, 398 F.3d 1210, 1218-19 (10th Cir. 2005) (citation and quotations omitted); *see also Martin v. City of Del City*, 179 F.3d 882, 886 (10th Cir. 1999).[3] "The first two steps are legal questions which the court resolves to determine whether the speech is constitutionally protected. The second two steps concern

---

[3] Although Merkel was not himself a government employee, he worked for a government contractor. In *Board of County Commissioners of Wabaunsee County, Kansas v. Umbehr*, the United States Supreme Court recognized "the right of independent government contractors not to be terminated for exercising their First Amendment rights." 518 U.S. 668, 686 (1996). Thus the analysis developed in government employer/employee cases to determine whether an impermissible infringement upon First Amendment rights has occurred is applicable here. *Id.* at 677-78, 685.

causation and involve questions of fact." *Dill v. City of Edmond, Okla.*, 155 F.3d 1193, 1202 (10th Cir. 1998) (citations omitted).

The first question we must decide is whether Merkel's speech touched on a matter of public concern. *Connick v. Meyers*, 461 U.S. 138, 146 (1983). "We have defined matters of public concern as those of interest to the community . . . ." *Lighton v. Univ. of Utah*, 209 F.3d 1213, 1224 (10th Cir. 2000). We focus "on the motive of the speaker and whether the speech is calculated to disclose misconduct or merely deals with personal disputes and grievances unrelated to the public's interest." *Id.*; *see also Baca*, 398 F.3d at 1219 ("An employee's motivation for speaking is important to our analysis of whether the speech pertained to matters of public concern.").

The record is clear. Merkel's chief complaint concerned the amount of time he was required to be "on call" — overtime for which he was paid. Merkel did not contend he was required to fly for an excessive number of hours, a situation which could reasonably be said to constitute a safety concern. In fact, he complained about how little actual flight time was involved during his three weeks on duty. Defendants acknowledged the amount of time Merkel was required to be on duty, but also noted actual flight time was limited to no more than eight hours for any one duty day.

Regardless of the manner in which Merkel expressed his concern about the amount of overtime, at issue is Merkel's statement he might file a report, not the

actual filing of the report nor its substance. The district court considered a Safecom report primarily aimed at workplace safety for employees, not at political or social concerns, or to the safety of the public. Thus, relying on *Lighton*, the court concluded a Safecom report simply "airs grievances of a purely personal nature." (Appellant's App. at 150.) The district court also commented: "The more specific issue is whether the statement by [Merkel] that he might file such a report would be a matter of public concern. The Court does not think one such statement, in the midst of a dispute with a supervisor, satisfies the public concern requirement." (Appellant's App. at 151.) We agree. Statements which merely pertain "to a personal dispute and grievance unrelated to the public's interest . . . do not merit First Amendment protection." *Baca,* 398 F.3d at 1219 (citation and quotations omitted); *see also Lighton*, 209 F.3d at 1225.

Merkel argues his "entire conversation [with Garcia] concerned unsafe flying hours" and thus "pertain[ed] to public safety and hence [was] a matter of public concern." (Appellant's Br. at 22.) However, it is not enough that the subject matter in a global sense might be of general interest. "What is actually said on that topic must itself be of public concern." *Wilson v. City of Littleton, Colo.*, 732 F.2d 765, 769 (10th Cir. 1984). In this case, what Merkel actually said was he "was considering making an official complaint in the form of a 'Safecom' report concerning the excessive duty day policy[,]" or "that maybe [he] would write a Safecom about it . . . ." (Appellant's App. at 106, 108.) Such statement

concerning a speculative action in the future is in the nature of a personal dispute, especially when considered in the context of the entire conversation which pertained to Merkel's personal dissatisfaction with the amount of overtime he was required to work. Thus, Merkel's speech, including his Safecom report comment, was not "calculated to disclose misconduct" but rather an attempt to gain negotiating leverage, thus, personal in nature and "unrelated to the public's interest." *Lighton*, 209 F.3d at 1224.

In this respect, Merkel's speech is similar to that in *Wilson*. There, a police officer placed a black shroud over his badge to mourn the death of an officer from another town. He was fired for refusing to remove the shroud when ordered to do so. In affirming the district court's judgment for the employer, we reviewed the "content, form, and context of [Wilson's] statement, as revealed by the whole record." *Wilson*, 732 F.2d at 768 (quotations omitted). We concluded the officer's personal feelings of grief did not rise to a matter of public concern within the meaning of *Connick*. *Id.* at 769.

The record and the law support the district court's finding that Merkel's statement — which arose from and centered on working conditions and only tangentially mentioned the possible filing of a Safecom report — did not state a matter of public concern. Merkel failed to carry his burden of establishing even the first required element of a First Amendment claim. Thus, we need not discuss the remaining elements. *Celotex*, 477 U.S. at 323 ("[A] complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").  Abeita and Garcia were entitled to qualified immunity.  Summary judgment was proper.  We affirm.

AFFIRMED.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge
