OPINION
SLOVITER, Circuit Judge.
Appellants Duryea Borough, the Borough Secretary, and members of the Borough Council (collectively “Defendants”) appeal a jury’s verdict and award of punitive damages on claims that they violated the First Amendment right to petition of appellee Charles J. Guarnieri, the former Chief of Police of Duryea. Guarnieri cross-appeals the District Court’s reduction of his attorney’s fees.
I.
Background
In February 2003, the Duryea Borough Council dismissed Guarnieri from his position as Chief of Police. Guarnieri filed a union grievance, which led to an arbitration. After about two years, Guarnieri prevailed and was reinstated to his position as Chief.
On his first day back, in January 2005, the Council issued eleven “directives” to Guarnieri. These directives comprised a list of things that Guarnieri must do or could not do on the job. Guarnieri filed a union grievance to complain about the directives, which led to another arbitration. Ultimately, the arbitrator directed Duryea to modify or abandon some of the directives.
Other disputes, often petty, arose between Guarnieri and Defendants.[1] As a result, Guarnieri filed this lawsuit, claiming in relevant part that the directives and *752 other acts by Duryea constituted unconstitutional retaliation for his having filed and won his 2003 grievance.
In December 2006, Guarnieri submitted a request for approximately $338.00 in overtime. The overtime was denied by the Council on the ground that Guarnieri did not explain why the overtime was necessary. The Department of Labor investigated and “found [that withholding the] overtime ... was a violation” of the law. App at 649. Guarnieri amended his complaint to add the overtime denial as a retaliatory act.
Three of Guarnieri’s First Amendment retaliation claims reached the jury: (1) the issuance of the directives; (2) the purported delay in the issuance of health insurance benefits; and (3) the withholding of overtime. The jury found for Guarnieri on the first and third claims, and awarded him a total of $45,358.00 in compensatory damages — $5,000 against each individual defendant for damages deriving from the directives; and $350.00 for damages due by the Borough and one dollar due from each individual for withholding the overtime. The jury also awarded Guarnieri a total of $52,000 in punitive damages— $3,000 against each individual defendant for issuance of the directives, and $3,500 against each individual defendant for the overtime.
The District Court denied Defendants’ motions for judgment as a matter of law and for a new trial. The Court, however, granted in part Defendants’ motion to reduce the attorney’s fees requested by Guarnieri. It first reduced the requested number of hours (473.8) by ninety-one because of “duplicativeness [with a similar First Amendment retaliation case against Duryea brought by a Borough employee, also represented by Guarnieri’s lawyer] ... inapplicability ... [and] excessiveness.” App. at 47-48. After making some other deductions, the Court arrived at a “total of three hundred ninety (390) hours” that it found to be reasonable for the work performed by Guarnieri’s lawyer through the trial. App. at 48. The Court then added thirty-two hours for post-trial work to which Defendants did not object and made a few other adjustments to the total hours not relevant here.
After reviewing Guarnieri’s counsel’s experience, the Court determined that a reasonable rate was $215 an hour, rather than the requested rate of $300 an hour. The Court referenced its prior decision in Lohman v. Borough, No. 05-CV-1423, 2008 WL 2951070, at *7-8 (M.D.Pa. July 30, 2008), where it had fixed Guarnieri’s counsel’s fee at $215 an hour. The District Court calculated that the “lodestar” for the sum of all legal work on Guarnieri’s case was $102,110.25. The Court made a further, omnibus reduction to the lodestar of over 50%; in the end it awarded only $45,000 in fees.[2]
II.
Analysis
Defendants contend they are entitled to judgment as matter of law, arguing: (1) that the evidence did not support a finding of punitive damages; (2) that the First Amendment does not protect government employees from retaliation for the filing of petitions unless they address matters of *753 public concern; (3) that Guarnieri’s petitioning activity was not protected because it was performed pursuant to his official duties; (4) that Defendants were entitled to qualified immunity because the law was not clearly established; and (5) that, for a variety of reasons, the evidence was insufficient to support liability. Defendants also argue they are due a new trial because the District Court denied their request to introduce into evidence sections of the 2005 arbitrator’s report. Guarnieri cross-appeals the Court’s omnibus reduction of the lodestar.
A. The First Amendment and Qualified Immunity
This court held that “a public employee who has petitioned the government through a formal mechanism such as the filing of a lawsuit or grievance is protected under the Petition Clause from retaliation for that activity, even if the petition concerns a matter of solely private concern.” Foraker v. Chaffinch, 501 F.3d 231, 236 (3d Cir.2007) (citing San Filippo v. Bongiovanni, 30 F.3d 424 (3d Cir.1994)). Defendants urge us to overrule that holding because other courts of appeals disagree, see San Filippo, 30 F.3d at 440 n. 19 (collecting cases); Martin v. City of Del City, 179 F.3d 882, 889 (10th Cir.1999), but we are bound by our prior holding.
Defendants also assert that “neither the Third Circuit nor the Supreme Court has decided the question of whether or not an employee who is petitioning the government pursuant to his official duties is acting as a citizen for First Amendment purposes.” Appellants’ Brief at 24 (citing Garcetti v. Ceballos, 547 U.S. 410, 421, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006)). We need not decide that issue because Defendants cite to no evidence that Guarnieri’s union grievance was made pursuant to his official duties.
Our decision in San Filippo is clearly established, controlling law, and Defendants are not entitled to qualified immunity. See Francisco Jose Rivero v. City and County of San Francisco, 316 F.3d 857, 865 (9th Cir.2002) (“The issue is not what the law was or might have been in other circuits----[i]t is, rather, what the ‘controlling authority in [the defendants’] jurisdiction [was] at the time of the incident.’ ” (quoting Wilson v. Layne, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999))).
B. Sufficiency of the evidence[3]
Defendants’ argument that Borough Secretary Morreale is not liable because she was merely performing clerical duties belies the evidence. Among other things, the Council acted through Morr-eale, Duryea’s personnel manager, who was responsible for paying Guarnieri, and the directive stating that Guarnieri had to obey orders was given by the Council through Morreale. “Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.” Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).
Defendants also argue that there was no evidence that Dommes, Groblewski, Orkwis, Webb, Yager, and Orloski were involved in the withholding of overtime. However, they all had been Council members at some time and did not argue to the jury that they were no longer Council members when the decision denying Guarnieri’s overtime pay was made.[4] The District Court referenced ample witness testi *754 mony from which a juror could reasonably infer it was the Council that withheld the overtime.
Defendants’ arguments that the only evidence of retaliation was temporal proximity, and that the temporal proximity evidence was insufficient are unpersuasive. The directives were issued the day that Guarnieri returned to work; there was evidence of continued acrimony between Guarnieri and Defendants; and this action was ongoing when the overtime was withheld.
Defendants argue that the issuance of the directives and the failure to pay Guarnieri for overtime would not have deterred “a person of ordinary firmness from exercising his constitutional rights.” Appellants’ Brief at 35. First Amendment retaliation claims are indeed cognizable only when the retaliatory act would “ ‘deter a person of ordinary firmness’ from exercising his First Amendment rights,” Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir.2000), but the “ ‘deterrence threshold,’ ... is very low .... [asj a cause of action is supplied by all but truly de minimis violations,” O’Connor v. City of Newark, 440 F.3d 125, 128 (3d Cir.2006) (citing Suppan, 203 F.3d at 234-35). “Even ‘an act of retaliation as trivial as failing to hold a birthday party for a public employee,’ if ‘intended to punish her for exercising her free speech rights,’ may be actionable. ...” O’Connor, 440 F.3d at 128 (quoting Suppan, 203 F.3d at 234) (internal quotations omitted). The jury was instructed to determine whether the retaliation in this case would have deterred a person of ordinary firmness, and we will not second-guess its verdict.
The argument of Duryea Borough that it had no policy or custom concerning any of the actions of which Guarnieri complains and therefore has no liability is unavailing because a “single decision by a final policy-maker ... may constitute official policy,” San Filippo, 30 F.3d at 445 (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)). There was ample evidence that the Council both made Borough policy and was responsible for the retaliatory acts.
C. New trial
Defendants challenge the District Court’s exclusion of the 2005 arbitrator’s report. Defendants do not specify any error in the District Court’s reasoning that the report was hearsay. Them citations and arguments concerning prejudice, however, are unconvincing; indeed, during the trial the Court upheld many of their objections to Guarnieri’s use of the report. Defendants had ample opportunity, which they used, to tell their position.
D. Punitive damages
Defendants argue that there was insufficient evidence to support the jury’s award of punitive damages. See Springer v. Henry, 435 F.3d 268, 281 (3d Cir.2006) (holding that a “jury may award punitive damages when it finds reckless, callous, intentional, or malicious conduct.”). We agree with them on this point. Although the record supports the jury’s finding that issuance of the directives and the withholding of overtime pay were retaliatory acts, and that those acts were petty and careless, neither those acts, nor any of the other petty and careless acts committed by Defendants, show “reckless or callous indifference to the federally protected rights of others.” Brennan v. Norton, 350 F.3d 399, 428 (3d Cir.2003) (quoting Smith v. Wade, 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983)). Overall, these acts support little “more than the retaliatory motive itself.” Brennan, 350 F.3d at 429-30.
*755 E. Attorney’s fees
Finally, in his cross-appeal Guarnieri challenges the District Court’s reduction of the lodestar. The District Court gave the following reasons: (1) the “overlapping labor” with the Lohman case; (2) its belief that Guarnieri’s case was not novel or difficult because the issues were similar to those in Lohman, and because counsel had brought § 1983 claims in the past; (3) the case was taken on a contingency basis, which, at an assumed 33% fee rate (no rate was provided to the Court) would have resulted in an attorney’s award of about $40,000; and, (4) the attorney’s fee award in Lohman was only $30,000.[5] Reliance on these reasons was legal error.[6]
“We review a district court’s award of fees for abuse of discretion[,] ... review a district court’s factual determinations, including ... the number of hours [an attorney] reasonably worked on the case, for clear error[,] ... [and][w]e exercise plenary review over the legal standard that the district court used in calculating the award.” United Auto. Workers Local 259 Soc. Sec. Dep’t v. Metro Auto Ctr., 501 F.3d 283, 290 (3d Cir.2007) (citations and quotations omitted); Student Pub. Interest Research Group of New Jersey, Inc. v. AT & T Bell Labs., 842 F.2d 1436, 1442 n. 3 (3d Cir.1988).
In City of Burlington v. Dague, the Supreme Court stated that “the difficulty of establishing [the] merits” of a claim is “ordinarily reflected in the lodestar ... [and thus] [t]aking account of it again through lodestar enhancement amounts to double counting.” 505 U.S. 557, 562-63, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992) (internal citations omitted). The Supreme Court has also “specifically held ... that the ‘novelty [and] complexity of the issues,’ ‘the special skill and experience of counsel,’ the ‘quality of representation,’ and the ‘results obtained’ from the litigation are presumably fully reflected in the lodestar amount, and thus cannot serve as independent bases for increasing the basic fee award.” Pennsylvania v. Delaware Valley Citizens’ Council for Clean Air, 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) (quoting Blum v. Stenson, 465 U.S. 886, 898-900, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)); United Auto. Workers, 501 F.3d at 292.
The factors on which the District Court relied in reducing this “lodestar,” i.e., the difficulty of the ease, overlapping hours, and counsel’s experience, were the same as the factors it considered in establishing the lodestar.[7]
The District Court also erred by using the contingency nature of a case to reduce fees, a practice specifically prohibited by Dague. See 505 U.S. at 561-62, 112 S.Ct. 2638.[8] In addition, the District Court’s *756 use of the fee award in Lohman (where the lodestar was significantly lower) as support for the downward multiplier was error. The award in that case was reduced significantly because the plaintiff had rejected a settlement offer that was much higher than the ultimate jury award. Lohman, 574 F.3d 163. There is no evidence of such an offer here. Further, the jury in Lohman awarded the plaintiff only $12,000. Other than overlapping work and counsel’s familiarity with the legal issues, both of which were subsumed into the lodestar, there is little reason why the fee award in Lohman is relevant.
III.
Conclusion
The jury’s verdict on the merits will be upheld except for the punitive damages award, which will be vacated. This case will be remanded to the District Court for a recalculation of attorney’s fees consistent with the standards articulated in this opinion.

. For example, the Council apparently told Guarnieri not to participate in truancy and *752 seat belt programs even though those activities were funded by a grant and cost the Borough nothing. Also, Guarnieri sought to have his health insurance cover his wife, but the Borough Secretary, Morreale, did not credit Guarnieri's assertion that he was married and demanded additional paperwork, even though Guarnieri submitted a marriage licence signed by Duryea’s mayor.

. The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343. This court has jurisdiction under 28 U.S.C. § 1291.

. "We review a denial of judgment as a matter of law de novo, viewing the evidence in the light most favorable to the prevailing party.” Monteiro v. City of Elizabeth, 436 F.3d 397, 404 (3d Cir.2006) (citing Caver v. City of Trenton, 420 F.3d 243, 262 (3d Cir.2005)).

. Dommes and Webb testified but apparently never denied that they or others participated *754 on the Council at the relevant times.

. Notably, the District Court did not apportion based on the number of successful claims. Nor did the District Court characterize the work by Guarnieri's attorney as inferi- or.

. Guarnieri also argues the District Court erred in setting counsel's hourly rate at $215. That rate is not clear error. See United Auto. Workers Local 259 Soc. Sec. Dep’t v. Metro Auto Ctr., 501 F.3d 283, 290 (3d Cir.2007); see also Lohman 574 F.3d at 164 n. 1.

. The District Court further erred because it gave Defendants relief they never asked for— Defendants only requested reductions for specifically identified hours as overlapping with Lohman, and stated that ”[i]f time was marked as specifically for work done on the Guarnieri matter, Defendants do not seek to reduce that time.” Dist. Ct. Dkt. 133 pg. #14. Ordinarily, Courts should not sua sponte apply negative multipliers. See Rode v. Dellarciprete, 892 F.2d 1177, 1192 (3d Cir.1990).

.We recognize that the referenced Supreme Court cases prohibited double counting in connection to the increase of fees awards, and that here the District Court decreased the *756 fees. However, Defendants make no argument, and we can think of none, why these holdings would not apply equally to prohibit a district court from double counting to reduce fees. See, e.g, Van Gerwen v. Guarantee Mut. Life Co., 214 F.3d 1041, 1048 (9th Cir.2000) (“A district court may not rely on a contingency agreement to increase or decrease what it determines to be a reasonable attorney’s fee.”).