NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 16-1187

———————————

KENNETH ROSSITER

v.

CITY OF PHILADELPHIA;
CHARLES H. RAMSEY,

Charles H. Ramsey,
Appellant

———————————

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-13-cv-03429)
District Judge: Honorable Gerald A. McHugh

———————————

Argued September 28, 2016

Before: SMITH, Chief Judge,◆ AMBRO and FISHER, Circuit Judges

(Opinion filed: December 29, 2016)

Elise M. Bruhl, Esquire    (Argued)
City of Philadelphia
Law Department
1515 Arch Street
One Parkway
Philadelphia, PA   19102

---

◆ Honorable D. Brooks Smith, United States Circuit Judge for the Third Circuit, assumed Chief Judge Status on October 1, 2016.

Counsel for Appellant

James E. Beasley, Jr., Esquire
David A. Yanoff, Esquire   (Argued)
The Beasley Firm
1125 Walnut Street
Philadelphia, PA   19107

Counsel for Appellee

———————————

OPINION[*]

———————————

AMBRO, Circuit Judge

Appellee Kenneth Rossiter brought a First Amendment retaliation claim against

Philadelphia Police Commissioner Charles Ramsey and the Philadelphia Police

Department for allegedly violating his First Amendment right to associate with the police

union.  On a motion for summary judgment, the District Court ruled that Rossiter had

alleged a colorable claim of unlawful retaliation and that then-Commissioner Ramsey and

the Department were not entitled to qualified immunity.  Ramsey and the Department

filed this appeal.  As the First Amendment right at issue was not clearly established, we

hold that Ramsey and the Department are entitled to qualified immunity.

Facts

Because this case comes to us on appeal of a motion for summary judgment

raising a qualified immunity defense, we view the facts on the record in the light most

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

favorable to Rossiter.  *Bayer v. Monroe Country Children & Youth Servs.*, 577 F.3d 186, 191 (3d Cir. 2009).  He joined the Department in 1982.  At the outset he became a member of the local chapter of the Fraternal Order of Police, a local police labor union, and he remains so.  As a member of the FOP, Rossiter has been covered by the terms of a collective bargaining agreement between the City of Philadelphia and the FOP.

An ongoing dispute between the FOP and the Department lays the context for Rossiter's retaliation claim.  Between January 2008 and January 2016, Ramsey served as Commissioner of the Department.  In 2010, he implemented without approval from the FOP a new Disciplinary Code covering officers in the Department.  In response, the FOP filed a complaint with the Pennsylvania Labor Relations Board alleging that the Code set a category of new rules under the labor agreement and therefore required the parties to negotiate prior to implementation.

For over two years, Ramsey and his representatives pressed the union to rescind the complaint instead of proceeding to a formal hearing.  In September 2012 the FOP's Vice President informed the Department that the union was moving forward with hearings, which began shortly thereafter.

During negotiations with the FOP over its labor complaint, the Department began a separate disciplinary action against Rossiter, who was then employed as a detective in the Homicide Unit.  In July 2011, the Department received an anonymous complaint that Rossiter was at home when he was supposed to be on duty.  In response, it began an investigation of Rossiter's conduct.  Department officials observed Rossiter at his residence 16 times when payroll records stated that he was working.  In December 2011,

3

a Department investigator questioned Rossiter about each instance; he claimed that he had permission to be at home and was working on cases.

In March 2012, the Department charged Rossiter with two counts of Conduct Unbecoming of a Police Officer under Sections 1-§010-10 and 1-§021-20 of the Disciplinary Code. He pleaded not guilty and requested a hearing before the Police Board of Inquiry.

On the day of his hearing, Rossiter learned it was postponed because the Department and the FOP were engaged in plea negotiations regarding him and three other members of the Homicide Unit. Rossiter met with the Vice President of the FOP over the proposed plea deal in his case. He maintained his unwillingness to plead. Over the next month, the FOP continued to discuss disciplinary actions against the four officers, yet the Department never rescheduled Rossiter's hearing.

In mid-June 2012, representatives from the FOP met with Deputy Commissioner Gaittens for their monthly grievance meeting. At the end of the meeting, the Deputy Commissioner noted two remaining issues. He brought up the disciplinary proceedings against Rossiter and the three other members of his unit. Gaittens suggested the Department would be willing to issue reprimands and allow the officers to remain employed. Next, he addressed the ongoing dispute over the labor complaint. According to the FOP's Vice-President, the Department offered to resolve the pending individual disciplinary actions in a favorable manner if the FOP would agree to withdraw the complaint against the Department. When the FOP continued to assert its intent to proceed with the complaint, Gaittens threatened to terminate Rossiter immediately. A

4

few days later Ramsey issued a Commissioner Direct Action suspending Rossiter for thirty days with intent to dismiss.  Four weeks later, he was terminated.

The FOP filed a grievance on behalf of Rossiter under its labor agreement on the ground that he did not receive a hearing before the Police Board of Inquiry prior to termination.[1]  Under the Agreement's grievance procedures, the FOP demanded an arbitration hearing on Rossiter's behalf.[2]  The arbitrator found the Department did not have just cause to terminate Rossiter and ordered it to restore him to his former position as a detective in the Homicide Unit without loss of seniority.  Thus he returned to work.

Procedural History

In June 2013, Rossiter filed an action in the District Court alleging five claims related to his termination.  The Court dismissed all but his First Amendment association claim—that Ramsey and the Department retaliated against him because of his association with the police union.  After discovery, Ramsey and the Department filed a motion for summary judgment.  They asserted that the First Amendment does not provide a cause of action because Rossiter himself did not engage in any protected activity and that, in any event, they were entitled to qualified immunity because there was no clearly established right to engage in the allegedly protected activity. The District Court rejected the qualified immunity defense.  It then denied the motion for summary judgment, finding that Rossiter asserted a colorable claim of retaliation.

---

[1] The FOP also filed a complaint against the Department for its conduct at the June 2012 meeting.
[2] The FOP filed similar grievances on behalf of the three other members of the Homicide Unit.  They settled by accepting a written reprimand and withdrawing their grievances.

Ramsey and the Department filed a motion for reconsideration. They argued that the Court defined too broadly Rossiter's right to associate and that case law did not clearly establish First Amendment protection for the activity involved here—passive membership of a union member who does not himself engage in any further expressive activity. The Court rejected this motion. It reiterated its belief that the law clearly established a right to associate with the union without fear of retaliation such that Ramsey and the Department would have been on notice that firing Rossiter because of his membership violated the First Amendment.

Ramsey and the Department appeal that decision. We have appellate jurisdiction over the District Court's resolution of questions of law, but not its determination that material issues of fact remain under 28 U.S.C. § 1291 and the collateral order doctrine.[3]

Our review is *de novo*, and we view inferences based on the underlying facts in the light most favorable to the nonmoving party. *Haybarger v. Lawrence Cty. Adult Prob. & Parole,* 551 F.3d 193, 197 (3d Cir. 2008) (internal quotation marks and citation omitted).

Discussion

1. Qualified Immunity

---

[3] The latter is an exception to the usual requirement of a final decision for appellate review. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 144 (1993). It requires that an order "[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." *Will v. Hallock*, 546 U.S. 345, 349 (2006) (citations omitted) (quotations omitted).

6

Qualified immunity from suits "shield[s] officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009). To overcome that immunity, the facts alleged by the plaintiff must show (1) the violation of a constitutional right and (2) that the right was clearly established at the time of the alleged misconduct. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). We may exercise our discretion to address the two *Saucier* prongs in either order in light of the circumstances in the particular case. *Pearson,* 555 U.S. at 236. Because we do not believe the right at issue here was clearly established, we begin with the second inquiry.

A Government official's conduct violates clearly established law when, at the time of the challenged conduct, every reasonable official would understand that what he is doing violates the right alleged. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). The Supreme Court recently emphasized that "'[w]e do not require a case directly on point' before concluding that the law is clearly established, 'but existing precedent must have placed the statutory or constitutional question beyond debate.'" *Stanton v. Sims,* 134 S. Ct. 3, 5 (2013) (quoting *al–Kidd,* 563 U.S. at 741). We look first for applicable Supreme Court precedent. If none exists, it may be possible that a "robust consensus of cases of persuasive authority" in the Courts of Appeals could clearly establish a right for purposes of qualified immunity. *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015).

To make out a First Amendment retaliation claim under 42 U.S.C. § 1983, a plaintiff must establish: (1) he engaged in First Amendment protected activity, (2) the

defendant took adverse action sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and (3) the adverse action was prompted by the plaintiff's protected activity. *Mitchell v. Horn,* 318 F.3d 523, 530 (3d Cir. 2003).

Rossiter alleged that Ramsey and the Department retaliated against him because he exercised his First Amendment right to be a member of the FOP, his union. The District Court found a clearly established right of a public-sector employee to be a member of an association. *Rossiter v. Ramsey*, No. CV 13-3429, 2015 WL 7756175 (E.D. Pa. Dec. 2, 2015) (citing *Smith v. Ark. State Highway Emps., Local 131*, 441 U.S. 463 (1979)). However, what it did not do was focus specifically on the kind of associational activity present in this case. *See Saucier*, 533 U.S. at 200-201 (instructing that we must frame clearly established law "in light of the specific context of the case, not as a broad general proposition."). That a public employee has a right to associate with a union is unchallenged. What is contested here is whether there is an established right of that employee in a pending disciplinary proceeding to associate passively with a union whose representatives oppose internal policies.

The District Court relied on *Smith* to find a clearly established right to be free of the retaliation Rossiter alleges in this case. However, in *Smith* the Court addressed whether the First Amendment requires the government to recognize the union as a negotiating agent. It affirmed that "[t]he public employee surely can associate and speak freely and petition openly, and he is protected by the First Amendment from retaliation for doing so," but held that the First Amendment "does not impose any affirmative obligation on the government to listen, to respond or, in this context, to recognize the

8

association and bargain with it." *Smith*, 441 U.S. at 464-65. In a *dictum*, the Court suggested that the government's action might not be lawful had it "tak[en] steps to prohibit or discourage union membership or association." *Id.* at 466. However, the case did not present that set of facts (the Court did not rule on it in any event), and nothing in the record suggests that any such steps occurred here. Moreover, *Connick v. Myers*, 461 U.S. 138, 154 (1983), subsequently clarified that the First Amendment Speech Clause provides a cause of action for retaliation claims only when a public employee speaks on matters of public concern. *See also Borough of Duryea v. Guarnieri*, 564 U.S. 379 (2011) (applying the public concern requirement to causes of action under the Amendment's Petition Clause).

The District Court also grounded its conclusion in *Labov v. Lalley*, 809 F.2d 220 (3d Cir. 1987), in which we held that the First Amendment protects the right of a public employee to organize an association for the purposes of collective bargaining. We later clarified that *Labov* held "only that efforts of public employees to associate together for the purpose of collective bargaining involve associational interests which the First Amendment protects from hostile state action." *Sanguigni v. Pittsburgh Bd. of Pub. Educ.*, 968 F.2d 393, 400 (3d Cir. 1992) (internal quotations omitted). Neither *Smith* nor *Labov* establish whether, and to what extent, the First Amendment's right to expressive association provides a cause of action for a union member in an employment dispute who claims retaliation based on his passive membership in a union whose representatives oppose internal policies.

9

In *Sanguigni*, we emphasized *Labov* "d[id] not make clear" whether *Connick*'s public concern requirement for public employee speech applies in associational cases. *Id.* We recognized that, in the years since we decided *Labov*, our Court had not settled the question of whether a public employee must demonstrate that the union representative's advocacy raises a matter of public concern in bringing a claim for expressive association. *Id.* We reserved judgment on whether the public concern requirement applies to association claims when those claims do not allege retaliation for the member's speech. *Id.*

Our sister Circuits are split on whether an employee must demonstrate that the protected activity relates to a matter of public concern to trigger First Amendment associational rights and consequent protections against retaliation. *See Cobb v. Pozzi*, 363 F.3d 89, 107 (2d Cir. 2004) ("In sum, *Connick* 's reliance on freedom of association cases and the Supreme Court's warning against the stratification of First Amendment freedoms convince us that a public employee bringing a freedom of association claim must demonstrate that the association or associational activity at issue touches on a matter of public concern."); *Klug v. Chi. Sch. Reform Bd. of Trs.,* 197 F.3d 853, 857 (7th Cir. 1999) ("[A] public employee is protected from adverse employment consequences based on the exercise of the right to freedom of association only when the associational conduct relates to a matter of public concern."); *Edwards v. City of Goldsboro,* 178 F.3d 231, 249–50 (4th Cir. 1999) (applying public concern requirement after concluding that "the limitations on a public employee's right to associate are 'closely analogous' to the limitations on his right to speak"); *Boals v. Gray,* 775 F.2d 686, 692 (6th Cir. 1985) ("We

10

perceive no logical reason for differentiating between speech and association in applying *Connick* to first amendment claims, and hold that it is so applicable."); *Martin v. City of Del. City,* 179 F.3d 882, 888 (10th Cir. 1999) ("This court has applied the[ ] principles from *Connick v. Myers . . .* in deciding First Amendment claims [for] violations of [the public employee's] right to freedom of speech, freedom of association, and to petition for redress of grievances."); *but see Boddie v. City of Columbus,* 989 F.2d 745, 747 (5th Cir. 1993) (holding that a plaintiff asserting a First Amendment freedom-of-association claim need not show that his or her purely associational activity touched upon a matter of public concern); *Hatcher v. Bd. of Pub. Educ. & Orphanage,* 809 F.2d 1546, 1558 (11th Cir. 1987) (holding that a principal who based a claim on her association with protesting parents was not required to demonstrate her association implicated a matter of public concern).

We accordingly find no consensus of authority that leveraging a claim against a specific union member facing good faith disciplinary action in an effort to settle internal police affairs implicates a clearly established constitutional right. What the Deputy Commissioner attempted to resolve by tethering Rossiter's case to resolution of union opposition to the Disciplinary Code may not be Hoyle, but it was not established as unconstitutional when it occurred. Therefore, Ramsey and the Department are entitled to qualified immunity, and we reverse the decision of the District Court and remand this case for it to enter judgment in their favor.