Nicholas LOHMAN, Appellant

v.

DURYEA BOROUGH; Duryea Borough Council; Ann Dommes, Individually and in her official capacity as Council President; Lois Morreale, Individually and in her official capacity as Borough Secretary; Frank Groblewski, Individually and in his official capacity as Councilman; Edward Orkwis, Individually and in his official capacity as Councilman; Robert Webb, Individually and in his official capacity as Councilman; Audrey Yager, Individually and in her official capacity as Councilwoman; Joan Orloski, Individually and in her official capacity as Councilwoman.

No. 08–3524.

United States Court of Appeals, Third Circuit.

Argued May 20, 2009.

Filed: July 23, 2009.

**164**

Cynthia L. Pollick, Esq., The Employment Law Firm, Pittston, PA, for Plaintiff–Appellant Nicholas Lohman.

Karoline Mehalchick, Esq., Oliver, Price & Rhodes, Clarks Summit, PA, for Defendants–Appellees Duryea Borough; Duryea Borough Council; Ann Dommes; Lois Morreale; Frank Groblewski; Edward Orkwis; Robert Webb; Audrey Yager Joan Orloski.

Before: RENDELL and GARTH, Circuit Judges, and PADOVA,* District Judge.

## OPINION OF THE COURT

RENDELL, Circuit Judge.

Nicholas Lohman appeals from the District Court's award of $30,000.00 in attorney's fees following a jury verdict in his favor in his wrongful discharge action. The jury awarded Lohman $12,205.00 in lost wages and nominal damages, after finding Appellees liable on one of Lohman's three First Amendment retaliation claims. Lohman contends that the District Court improperly considered settlement negotiations between the parties, including evidence that Lohman rejected a settlement offer of $75,000.00, to reduce the fee award. The issue before us—namely whether and to what extent the trial court may consider settlement negotiations when awarding fees—appears to be one of first impression in our Court.[1]

## I. Background

Nicholas Lohman brought an action asserting numerous claims relating to his

---

* Honorable John R. Padova, Senior Judge of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

1. Lohman also challenges the hourly rate used by the District Court in determining the lodestar, which was below the rate he urged. However, there was ample evidence to support the Court's lower rate and we conclude that the Court did not clearly err in choosing the rate that it did. *See Interfaith Comty. Org. v. Honeywell Intern., Inc.,* 426 F.3d 694, 703 n. 5 (3d Cir.2005) ("[W]e will not upset a district court's factual determinations, including its determination of an attorney's reasonable hourly rate and the number of hours he or she reasonably worked on the case, unless we find them to be clearly erroneous.").

discharge from employment with Duryea Borough. Only three First Amendment retaliation claims survived summary judgment and proceeded to trial. Defendants made three settlement offers after trial commenced, including one for $75,000.00. Lohman rejected each of these offers. The jury found for Lohman on one of the three claims, and awarded him $12,205.00 in lost wages and nominal damages. Lohman moved for attorney's fees and costs of $112,883.73.

The District Court granted the motion in part, awarding $30,000.00 in attorney's fees and $4,251.77 in costs. The District Court engaged in an extensive consideration of the lodestar, and a review of the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), and referenced by the Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424, 434 n. 9, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The District Court noted that in *Hensley*, the Supreme Court stated that "the most critical factor" in determining a reasonable fee "is the degree of success obtained." *Lohman v. Borough of Duryea*, No. 05–1423, 2008 W.L. 2951070 (M.D.Pa. July 30, 2008) at *11 (quoting *Hensley*, 461 U.S. at 436, 103 S.Ct. 1933).

The District Court then proceeded to refer to case law that had been cited by the parties regarding the propriety of considering settlement negotiations in awarding fees, including *Alphonso v. Pitney Bowes, Inc.*, 356 F.Supp.2d. 442 (D.N.J. 2005), which was relied upon by Lohman. In *Alphonso*, defendants brought a post-trial motion for sanctions against a plaintiff, arguing that the plaintiff's unsuccessful employment retaliation claims were frivolous. *Id.* at 445. The plaintiff sought to undermine the defendants' position by offering evidence that the defendants made a settlement offer on the eve of trial.

*Id.* at 447 n. 4. The court disregarded the plaintiff's argument, intimating that the use of settlement discussions to show the validity or invalidity of a claim would violate Federal Rule of Evidence 408. *Id.*

However, the District Court here found another case, *EMI Catalogue Partnership v. CBS/Fox Co.*, No. 86–1149, 1996 W.L. 280813 (S.D.N.Y. May 24, 1996), to be more relevant, and its logic more persuasive. In *EMI*, the court referred to the language of Rule 408 and considered the precise issue before us in a copyright case. The court noted that a distinction should be drawn where

> evidence of the alleged settlement negotiations is not being offered to prove "either liability for or invalidity of the claim or its amount." Rather, it is being offered to show that the Court's rejection of the claim should not merit an award of attorney's fees under the Court's power of equitable discretion. . . .

*Id.* at *2 (quoting Fed.R.Evid. 408). Furthermore, the court noted,

> Because nothing in the language of Rule 408 requires exclusion of evidence of settlement negotiations on issues "other than liability for or invalidity of a claim or its amount," the Court can consider evidence of settlement negotiations where, as here, that evidence is probative of the objective unreasonableness of the claim for purposes of determining whether to award attorney's fees under the Copyright Act.

*Id.* The District Court here agreed, and concluded that evidence of settlement negotiations could be used as an indicator of the degree of success obtained by Lohman's counsel under § 1988. It stated, in so concluding: "The fact that Plaintiff prevailed at trial may not be entirely indicative of counsel's success. Therefore, the Court will consider the settlement negotia-

tions in its determination of Plaintiff's attorney's fee award." *Lohman,* 2008 WL 2951070 at *12 (internal citation omitted).

The Court calculated a lodestar of $62,986.75, but concluded that the award should be reduced for limited success. In reasoning through this reduction, evidence of settlement negotiations between the parties was but one consideration:

> In this case, the Court finds that the lodestar, or the product of the reasonable rate times the reasonable hours, results in an excessive fee award. As per *Hensley,* a court may consider other facts in determining an award. *Hensley,* 461 U.S at 434, 103 S.Ct. 1933. The degree of success obtained for Ms. Pollick was not as great as she claims. Of the six (6) claims in the Complaint, only the First Amendment claims went to trial. Of the claims that were presented to the jury, only one (1) claim returned a verdict in favor of the Plaintiff.

Furthermore, the Court notes that the Plaintiff's counsel may have achieved a much greater level of success if Plaintiff had settled the case. A seventy-five thousand dollar ($75,000.00) result in settlement is significantly greater than the twelve-thousand, two-hundred and five dollar ($12,205.00) result obtained at trial. Plaintiff noted that she worked on a contingent fee basis. Had Plaintiff settled for the seventy-five thousand dollars ($75,000.00), counsel would only have been entitled to about twenty-five thousand dollars ($25,000.00), as contingent fee agreements often call for approximately thirty-three percent (33%). If she had a contingent fee agreement of forty-percent (40%), she would have received thirty-thousand dollars ($30,000.00). Likewise, a contingent fee of the jury's verdict would have yielded four-thousand and sixty dollars and thirty-three cents ($4068.33) and four-thou-

sand, eight-hundred and eighty-two dollars ($4882.00) respectively.

Plaintiff's counsel argues that she achieved "excellent" results for her client, especially because this trial followed on the heels of another trial. The fact that this trial followed another is not relevant. While she focuses on the fact that she received a jury verdict in her favor, her client received a lesser result from trial than from settlement, and only prevailed on one claim. In this case, the results obtained at trial do not justify an award of over sixty-thousand dollars ($60,000.00) as calculated by the lodestar, and surely does not justify the requested fees of over one-hundred thousand dollars ($100,000.00).

The *Johnson* factors, other than the results obtained factor, also justify a reduced award. The skill requisite to perform the services was not particularly rigorous-Plaintiff's counsel often brings First Amendment retaliation claims, and such a claim is not a new or novel issue of law. The claims were not particularly difficult. . . . Counsel did not demonstrate any special ability in the prosecution of the case. The case cannot be considered "undesirable"-there is no evidence that Mr. Lohman was unable to attract other attorneys to this case. These factors weigh in favor of a downward departure from the lodestar.

Based upon the *Johnson* factors, including the results obtained factor, the Court finds that a downward departure of the lodestar is warranted, and Plaintiff will be awarded a total of thirty thousand dollars ($30,000.00) in attorney's fees. Such an award is comparable to the award Plaintiff's counsel would have received had the Plaintiff settled for the maximum settlement offer, and substantially greater than one she would have received under a normal contingent fee of the verdict.

Lohman argues on appeal that the District Court erred by using evidence from settlement negotiations to reduce the fee award.

## II. Discussion

■ In a civil rights action, a district court, "in its discretion, may allow the prevailing party ... a reasonable attorney's fee." 42 U.S.C. § 1988. It is undisputed that Lohman prevailed in his action, but the parties disagree as to whether the fee awarded was reasonable. We have jurisdiction to review a fee award under 28 U.S.C. § 1291, once the award has been reduced to a definite amount. *Interfaith Cmty. Org. v. Honeywell Int., Inc.*, 426 F.3d 694, 701 (3d Cir.2005). While we generally review fee awards for abuse of discretion, the issue as to what standards are to be applied in determining the fee involves a question of law, and our review of the issue before us is plenary. *Washington v. Phila. County Court of Common Pleas*, 89 F.3d 1031, 1034–35 (3d Cir.1996).

■ We agree with the District Court that Rule 408 does not bar a court's consideration of settlement negotiations in its analysis of what constitutes a reasonable fee award in a particular case. By its terms, Rule 408 requires exclusion of evidence of such negotiations "when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction." [2] This was the case in *Alphonso*, relied on by Lohman in the District Court, where evidence of negotiations was offered to demonstrate that the defendants believed that the plaintiff's claim had merit. We do not disagree that settlement negotiations cannot be used in this way, for the Rule clearly places settlement negotiations off limits where the validity of the claim is at issue.[3]

■ While evidence of settlement negotiations is inadmissible to prove the merit or lack of merit of a claim, the use of such evidence as bearing on the issue of what relief was sought by a plaintiff does not offend the clear terms of Rule 408. Such evidence can be relevant when comparing what a plaintiff "requested" to what the plaintiff was ultimately "awarded." We noted in *Washington* the "settled principle ... that counsel fees should only be awarded to the extent that the litigant was successful." *Washington*, 89 F.3d at 1042. *Hensley* instructs us that "[t]here is no precise rule or formula" for determining how a fee should be adjusted to reflect

**2.** Federal Rule of Evidence 408 provides in full:

(a) Prohibited uses.—Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction:

(1) furnishing or offering or promising to furnish—or accepting or offering or promising to accept—a valuable consideration in compromising or attempting to compromise the claim; and

(2) conduct or statements made in compromise negotiations regarding the claim, except when offered in a criminal case and the negotiations related to a claim by a public office or agency in the exercise of regulatory, investigative, or enforcement authority.

(b) Permitted uses.—This rule does not require exclusion if the evidence is offered for purposes not prohibited by subdivision (a). Examples of permissible purposes include proving a witness's bias or prejudice; negating a contention of undue delay; and proving an effort to obstruct a criminal investigation or prosecution.

**3.** Appellees refer to several cases where settlement offers were used by courts as evidence of the amount in controversy, and urge that these cases are persuasive on the issue before us. We view these cases as not sufficiently similar to warrant discussion.

limited success. *Hensley,* 461 U.S. at 436, 103 S.Ct. 1933. These determinations are appropriately committed to the discretion of the district court "in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Id.* at 437, 103 S.Ct. 1933. While evidence of settlement negotiations is only one indicator of the measure of success, it is a permissible indicator that is not precluded by Rule 408.

Lohman urges that permitting the use of evidence from settlement negotiations to reduce attorney's fees is against public policy, because it will penalize civil rights attorneys who achieve only partial success, and will discourage settlement discussions. He also argues that Appellees' failure to make an offer of judgment under Rule 68 of the Federal Rules of Civil Procedure should preclude the Court from considering settlement discussions under these circumstances.

While the asserted policy implications have superficial appeal, upon reflection they are not convincing. The concept of having reduced fees awarded based on partial success is not a new one—indeed, it is well settled in our jurisprudence. *See Hensley,* 461 U.S. at 436, 103 S.Ct. 1933 ("Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, the most critical factor is the degree of success obtained."). No exception has been made in the case law for fee awards in civil rights cases.

Moreover, the thought that settlement discussions will not now occur because an attorney could be penalized if he or she achieves less than was demanded makes little sense. In fact, permitting settlement negotiations to be considered would encourage reasonable and realistic settlement negotiations. In addition, there has been no argument made that a plaintiff's naming or rejection of a number is anything other than an indication of what the plaintiff is seeking. It comports with established law to consider what was sought as compared to what was awarded. Accordingly, the policy considerations asserted by Lohman lack a solid footing in any real policy.

We also reject Lohman's argument that the failure of Appellees to make an offer of judgment under Rule 68 should preclude the District Court from considering settlement negotiations in determining the degree of Lohman's success. Rule 68 encourages settlement by providing a formal process by which a defendant may limit its exposure to trial costs by making a written offer of judgment more than ten days prior to trial. Fed.R.Civ.P. 68(a). If a plaintiff rejects such an offer, and obtains a less favorable judgment thereafter, the plaintiff is responsible for costs incurred after the offer was made. Fed.R.Civ.P. 68(d).

We do not disagree that Rule 68 was available to Appellees more than ten days prior to trial as a means to potentially limit subsequent costs. However, we fail to see how the existence of this Rule and availability of this strategic mechanism for limiting one's costs should preclude a district court from considering informal negotiations for the unrelated purpose of determining the extent of relief sought by a plaintiff.[4] The District Court here did not

---

4. Moreover, the cases relied on by Lohman regarding Rule 68 are factually distinguishable and do not set forth a categorical rule that applies here. In *Ortiz v. Regan,* 980 F.2d 138 (2d Cir.1992), the Court of Appeals for the Second Circuit rejected a district court's denial of fees for work performed by plaintiff's counsel after the defendants offered the plaintiff a post-deprivation hearing. Instead of requesting a hearing, plaintiff proceeded

deny Lohman fees and costs incurred after the rejected offer, but merely reduced the fee award in part because Lohman was ultimately awarded substantially less than he sought.

■ We think it important to note that we hold only that settlement negotiations *may* be relevant in measuring success, and, if so, are clearly only one factor to be considered in the award of fees.[5] A court is also free to reject such evidence as not bearing on success when, for instance, negotiations occur at an early stage before discovery, or are otherwise not a fair measure of what a party is truly seeking in damages. Here, however, the District Court considered evidence that, during trial, Lohman rejected a settlement offer of $75,000.00, an offer more than six times the amount awarded by the jury. Lohman offers no explanation as to why his rejection of this amount is not probative of the amount he sought in damages. Nor does he offer a reason as to why a comparison between the rejected $75,000.00 offer and the ultimate $12,205.00 jury award would not be an indication of his success in the litigation as a whole.

Accordingly, we will AFFIRM the Order of the District Court.

---

with her due process claim based on defendants' conduct prior to the suspension of her retirement benefits. The court of appeals stated that the "availability of Rule 68" provided "additional weight" for its conclusion that the district court abused its discretion by cutting off all fees incurred after the rejected offer. *Id.* at 141. The District Court here did not cut off all fees incurred after Lohman rejected Appellees' settlement offer.

In *Clark v. Sims*, 28 F.3d 420 (4th Cir. 1994), the Court of Appeals for the Fourth Circuit concluded that a district court erred in applying Rule 68, because the offer in question did not meet the formality requirements of the Rule. *Id.* at 423. The case at bar does not involve any application of Rule 68.

In *Cooper v. Utah*, 894 F.2d 1169 (10th Cir.1990), the Court of Appeals for the Tenth Circuit determined that a district court erred by reducing a fee award to one half of the lodestar based on simplicity of issues, because simplicity of issues should have been factored into the determination of the lodestar. *Id.* at 1171. In a terse statement, the court "[a]dditionally" noted that the district court's reduction of fees in light of settlement negotiations was "not well-founded" where defendants failed to make an offer of judgment under Rule 68. *Id.* at 1172. There is no indication that the district court's use of settlement negotiations in *Cooper* was analogous to the application in this case, nor is it clear that the settlement issue was necessary to the holding on appeal.

5. Here, as the District Court's analysis quoted above makes clear, the Court considered many factors, including the degree of Lohman's success, before awarding a fee of $30,000, roughly one-half of the lodestar.