HEADNOTES

JOY FRIOLO v. DOUGLAS FRANKEL, et al.  (S.T. 2011, No. 102)

IN THIS THIRD APPEAL OVER AN AWARD OF ATTORNEYS' FEES IN A WAGE PAYMENT CASE, THE COURT OF APPEALS:

(1) CONFIRMED THAT THE LODESTAR APPROACH IS THE ONE TO BE USED IN DETERMINING THE REASONABLENESS OF FEES SOUGHT IN WAGE PAYMENT CASES;

(2) HELD THAT THE MATHEMATICAL FORMULA CRAFTED BY THE COURT OF SPECIAL APPEALS TO MEASURE THE REASONABLENESS OF FEES BASED ON THE PRECISE RELATIONSHIP AMONG THE PLAINTIFF'S CLAIM, THE PLAINTIFF'S SETTLEMENT DEMAND, THE DEFENDANT'S SETTLEMENT OFFER, AND THE AMOUNT OF THE JUDGMENT FOR THE PLAINTIFF IS FLAWED AND NOT CONSISTENT WITH THE LODESTAR APPROACH;

(3) HELD THAT LODESTAR AMOUNT MAY BE REDUCED, EVEN SIGNIFICANTLY, WHEN THE ATTORNEY EFFECTIVELY PROLONGS THE LITIGATION BY REFUSING REASONABLE SETTLEMENT OFFERS OR MAKING UNREASONABLE DEMANDS;

(4) HELD THAT THE CIRCUIT COURT ERRED IN NOT AWARDING ANY FEES FOR TIME EXPENDED IN PURSUING SUCCESSFUL APPEALS; AND

(5) REMANDED THE CASE FOR FURTHER PROCEEDINGS REGARDING FEES FOR THE APPELLATE EFFORT.

Circuit Court for Montgomery County

Case No. 207350

Argued 4/3/14

IN THE COURT OF APPEALS
OF MARYLAND

No. 102

September Term, 2011

_____

JOY FRIOLO

v.

DOUGLAS FRANKEL, ET AL.

_____

Barbera, C.J.,
Harrell
Battaglia
Greene
Adkins
McDonald
Wilner, Alan M. (Retired,
specially assigned)

JJ.

_____

Opinion by Wilner, J.

_____

Filed: May 19, 2014

This case is making its third appearance in this Court, having visited the Court of Special Appeals twice and having occupied the attention of the Circuit Court for Montgomery County on three occasions, one of which involved two separate proceedings. Like Kaufman and Hart's man who came to dinner, it is wearing out its welcome.

BACKGROUND

In February 1998, Joy Friolo was hired by Douglas Frankel, a physician, to handle his billings and collections, at an annual salary of $26,000. She was discharged by Frankel on April 4, 1999. In February 2000, Friolo and her husband, Victor Salazar, filed a ten-count complaint against Frankel and his practice in the Circuit Court for Montgomery County.

There were four categories of claims spread among the various counts. Friolo contended that, during her employment, she and Frankel agreed that she would receive a five percent interest in the medical practice and, as a bonus, five percent of the monthly receivables she collected. She sought $50,000 for the interest in the practice and $9,441 for unpaid monthly bonuses. She also complained that she was entitled to premium pay for 417 hours of overtime, which she calculated as $9,070. Those were her three claims. Her husband, who was never actually employed by Frankel, claimed an entitlement to recompense for 200 hours of work he did for Frankel. His compensatory claim was for $1,030.

Friolo's claim for the unpaid overtime and Salazar's claim for the 200 hours of work he allegedly performed were based, in part, on the Maryland Wage and Hour Law (Md. Code, §§ 3-401 through 3-431 of the Labor and Employment Article (LE)), which is the

Maryland counterpart to the Federal Fair Labor Standards Act. Section 3-427 permits an employee who is paid less than the wage required under that Act to sue the employer to recover the difference and provides that, if a court determines that the employee is entitled to a recovery in the action, the court may allow against the employer reasonable counsel fees and costs.

The plaintiffs' claims for unpaid wages were also based, in part, on the Maryland Wage Payment and Collection Law (LE §§ 3-501 through 3-509). As we recently explained in *Marshall v. Safeway*, Md. , A.3d (2014), that law requires that all wages that are due to an employee be paid at certain times. What was formerly LE § 3-507.1 but, due to a 2010 amendment is now LE § 3-507.2 also permits a direct action by an employee against an employer who fails to comply with that requirement. It provides that, in such an action, the court may award the employee an amount not exceeding three times the wage due and reasonable counsel fees if the court finds that the employer withheld the wage in violation of the act "and not as a result of a bona fide dispute."

In addition to their compensatory claims, Friolo and Salazar sought attorneys' fees and treble damages under both statutes (even though there is no provision for enhanced damages under the Wage and Hour Law). In addition, based on associated claims of fraud, they sought punitive damages. Early in the case, the plaintiffs offered to settle for $36,000. No offer was made by Frankel at that time. In a Joint Pretrial Statement signed in January 2001 – nearly a year into the litigation and five months before trial – Friolo said she was

seeking $6,003 for unpaid bonuses and $9,070 for unpaid overtime. The plaintiffs offered to settle the case for $65,000 – the increase from $36,000 principally being due to $27,000 in accumulated attorneys' fees. Frankel offered only $2,500.[1]

There being no settlement, the case proceeded to trial before a jury, Judge Beard presiding. During the trial, Salazar dismissed all of his claims and Friolo dropped her claim for a 5 percent interest in Frankel's medical practice and reduced her claims for unpaid bonuses and overtime. The only claims that were submitted to the jury were Friolo's revised claim for $6,841 in unpaid bonuses and $5,237 for unpaid overtime, and, as we pointed out in our first Opinion in this case, the dispute over those items was a narrow one. Frankel acknowledged the bonus arrangement but contended that he had paid all of the bonuses that were due, and he claimed that Friolo was not entitled to overtime because she was an administrative employee. *See Friolo v. Frankel*, 373 Md. 501, 507, 819 A.2d 354, 358 (2003).[2]

The jury awarded all but $300 that Friolo requested for compensatory damages – $6,841 for unpaid bonuses and $4,937 for overtime. The jury was instructed that, if it found that Frankel withheld wages from Friolo and the withholding was not a result of a bona fide

---

[1] Frankel claims he offered approximately $3,000, and the Court of Special Appeals seemed to accept that figure, but, in a joint pre-trial statement signed by the attorneys for both sides, the offer was stated to be $2,500.

[2] LE § 3-403 provides that the Wage and Hour Law does not apply to an individual who is employed in a capacity that the Commissioner of Labor and Industry, by regulation, defines to be administrative, executive, or professional.

- 3 -

dispute, it could, if it deemed appropriate, award her extra compensation up to three times the amount "that you find she is entitled to." Upon an objection by Friolo that the instruction was limited to the unpaid overtime pay, the court, without objection but nonetheless erroneously, modified the instruction to permit a treble damage award with respect "to both overtime and the other compensation that you feel the plaintiff is entitled to, if you rule in her favor." Although a Special Verdict Form was used, the jury was not asked to determine whether any wages it might find were due were, or were not, withheld as the result of a bona fide dispute, and it made no such determination. It did, however, award $0 in additional damages, both with respect to the unpaid bonuses and the unpaid overtime. Judgment was entered in favor of Friolo for the aggregate of $11,778. Frankel filed a motion for new trial, which was denied. He then paid the judgment.

Two weeks after entry of the judgment, Friolo's attorney, Leizer Goldsmith, filed a motion for attorneys' fees and costs. The motion asserted that the fees should be calculated in accordance with a modified lodestar approach (reasonable hours expended times reasonable hourly rate), and it offered as reasonable a total of 263 hours expended by four attorneys in the firm at hourly rates ranging from $305/hour for Goldsmith to $90/hour for associates, for a total of $61,125. Goldsmith deducted 10 percent of that amount for claims that were not successful, for a net amount of $55,012. Thirteen days later, in a supplemental motion, he raised the amount to $57,059 based on 228 hours, and three months after that, he raised it to $69,637 based on 275 hours. Frankel responded that, because the jury did not

find the lack of a bona fide dispute (and thus inferentially must have concluded that there *was* one), *no* fees were warranted under LE § 3-507.1 and that, in any event, the fees requested were unreasonable.

In a hearing on the matter, the court, through Judge Beard, though suggesting that it was considering the lodestar approach, actually awarded a $4,712 fee based on that being 40 percent of the $11,778 judgment. Friolo appealed, claiming that the court erred in not using the lodestar approach. The $4,712 fee, she contended, amounted to less than 10 percent of what a lodestar approach would have warranted. Noting that, by virtue of LE § 3-507.1, no attorneys' fees could be awarded with respect to the claim for bonuses under the Wage Payment Act unless the non-payment was not the result of a bona fide dispute, but that the court included in its fee 40 percent of that claim, Friolo urged, at least by inference, that the court must have concluded that there was no bona fide dispute regarding the bonuses. Frankel contended that there was no actual entitlement to attorneys' fees and that the court did not err in refusing to use a lodestar approach. There were basically two straightforward legal issues presented.

We answered the two questions. We acknowledged that there was no actual entitlement to attorneys' fees under either statute, but noted that the court *did* award fees in this case and that no cross-appeal had been taken from that decision, so the exercise of that discretion was not before us. The only issue was the appropriate method of calculating the fee, and, as to that, we held that the lodestar approach, more-or-less as it had been applied

in the Federal courts, was the proper method. We set out the kinds of considerations that might justify a departure from a strict hours-times-rate calculation and remanded the case for the Circuit Court to use that approach. *Friolo v. Frankel, supra*, 373 Md. 501, 819 A.2d 354. In doing so, we observed that (1) even using a lodestar approach, the $57,000 fee sought by Goldsmith was *not* reasonable, *id* at 512, 819 A.2d at 361, and (2) we were not suggesting that the $4,712 awarded by the court was unreasonable, *id*, at 529, 819 A.2d at 371. We noted further that, on remand, the court would need to consider that the jury had made no finding of a lack of bona fide dispute with respect to the non-payment of bonuses and whether the unsuccessful claims were truly related to the successful ones, *id*. at 530, 819 A.2d at 371. Because Friolo was successful in the appeal, we assessed the costs of the appeal against Frankel. *See* Md. Rule 8-607 ("Unless the Court orders otherwise, the prevailing party is entitled to costs").

When the case returned to the Circuit Court, Friolo filed a third supplement to her motion for attorneys' fees in which she renewed her request for $69,637 with respect to the first trial proceeding and sought an additional $58,172 for time expended since the initial award, for a total of $127,810 (plus costs of $3,345). Frankel contended that there was no precedent, at least with respect to the two statutes, for awarding any fees for time spent pursuing an appeal by the plaintiff where the amount of the underlying judgment was not at issue and urged the court to award only a "modest" fee.

In October 2003, Judge Beard awarded Friolo what the judge regarded as a "lodestar

amount" of $65,348.[3]  That amount was determined by multiplying 194 hours by $295 and

35 hours by $200 – the rates specified in the retainer agreement between Friolo and

Goldsmith – but which the court concluded took into consideration the complexity of the

litigation, the "success rate of the different parts of the litigation," and the uniqueness of the

issues.  Neither party was happy with that result.  Each filed a motion to alter or amend the

award, and, when those motions were denied, each appealed.  Friolo urged that the award

did not comply with the lodestar approach as directed by this Court.  Her principal complaint

was that the court had failed to award any fees for the time expended in post-trial

proceedings –  the successful appeal to this Court and proceedings before the Circuit Court

on remand.  Frankel responded that there was no abuse of discretion in denying fees for post-

trial advocacy that did not result in any tangible benefit to Friolo – that the appeal and the

proceedings on remand were solely for the benefit of Goldsmith's firm.

The Court of Special Appeals agreed with Frankel that any entitlement under the two

statutes to reasonable fees "does not extend to compensation for appellate and post-remand

services where the plaintiff's judgment has been satisfied and the sole issue on appeal is

counsel's dissatisfaction with the trial court's award." *Frankel v. Friolo*, 170 Md. App. 441,

452, 907 A.2d 363, 370 (2006).  Friolo, it said, was not entitled to attorneys' fees for

appellate or post-judgment services unrelated to (1) protecting the underlying judgment, (2)

---

[3] Judgment was not entered on the award until March 2005.  Judge Dugan signed the judgment.

securing specific relief afforded by the trial court, or (3) overturning a grossly disproportionate award or outright denial of attorneys' fees.  The appellate court concluded, however, that there was "a noticeable absence of any clear explanation of the factors utilized by the court in awarding \$65,348," that it was unclear "whether the fee awarded included both trial and post-trial work and, if so, how the fees were apportioned."  *Id.*, at 450, 907 A.2d at 368-69.  From that, the Court of Special Appeals found that the record did not support the conclusion that the court "actually used" the lodestar approach as articulated by this Court.  It vacated the award and directed that the case be remanded for the trial court to determine whether any of the time expended for post-trial or appellate work was related to any of the three purposes  for which fees could properly be awarded.

We granted Friolo's petition for *certiorari* to consider the correctness of the intermediate appellate court's conclusion regarding post-trial and appellate fees.  We agreed with that court's conclusion that, in direct conflict with, and in apparent disregard of, our instructions in *Friolo I*, the trial court failed to provide an explanation of how the lodestar factors affected the amount of the award, and that, regrettably, the case needed to be remanded again so that the court could apply the lodestar factors, using the analysis set forth in *Friolo I,* "so that the parties and any reviewing appellate court can follow the reasoning and test the validity of the findings."  *Friolo v. Frankel*, 403 Md. 443, 454-55, 942 A.2d 1242, 1248-49 (2008).

We disagreed, however, with the three-part test formulated by the Court of Special

Appeals to determine the circumstances under which fees could properly be awarded for appellate work. We noted the flaws in that test and concluded that, when a plaintiff obtains relief under the wage statutes and, in connection therewith, obtains an award of attorneys' fees and, on appeal, is successful in procuring an increase in those fees or in correcting an error made by the trial court, "attorneys' fees incurred during the appeal should be considered as a part of the lodestar analysis required to be conducted on remand. . ." *Id.*, at 460, 942 A.2d at 1252. The proper standard is the degree of success on appeal. On remand, we said, the court must include in the lodestar analysis "appellate fees Friolo incurred in successfully challenging, based on the flawed methodology the Circuit Court used, the attorneys' fee awarded in this case." *Id*. at 462, 942 A.2d at 1253.

Again, the case returned to the Circuit Court where Judge Dugan, who had replaced Judge Beard as the presiding judge, referred it to retired Judge William Rowan, as a special master. The incessant sparring – motions, submissions, objections – went on for nine months.[4] The last submission by Friolo sought a total of $388,129 in fees and expenses.[5] Frankel urged that Friolo be awarded only $29,563 for the entire case. The parties stipulated

---

[4] The case was referred to Judge Rowan on April 24, 2009. A hearing before Judge Rowan was held on October 13, 2009. Motions and other submissions continued to be filed until January 28, 2010, when his report was filed.

[5] There were multiple submissions by Friolo covering fees and expenses requested for varying periods during the litigation, and it is difficult to reconcile some of the numbers. The master found that Friolo sought $77,608 for the trial stage based on 264 hours, $266,135 for appellate and post-trial work based on 795 hours, and $41,863 for work following the second remand, based on 122 hours, which comes to only $385,606.

- 9 -

that the hourly rates to be applied by the master were $351.25 for Goldsmith, $238.14 for two of his associates, and $208.37 for three other associates. After reviewing the submissions in light of the lodestar standards, Judge Rowan concluded:

A. With respect to the claim of $77,608 for work at the initial trial level:

(1) a reduction to $45,703 was appropriate because many of the hours were unnecessary and unreasonable,

(2) that amount should be further reduced by 58 percent, to $19,196, because (i) there was no predicate finding that Frankel's withholding of $6,841 in bonuses was not due to a bona fide dispute, (ii) absent such a finding there is no entitlement to attorneys' fees under the Wage Payment Act, and, as the $6,841 constituted 58 percent of the total judgment of $11,778, there should be a proportionate reduction in the fees claimed for the trial work; (iii) no adjustment was warranted because of the novelty or difficulty of the issues, the preclusion of other employment, time limitations imposed, the experience, reputation, and ability of Friolo's attorneys, undesirability of the case, the nature and length of Goldsmith's relationship with Friolo, or awards in other cases; (iv) there was nothing in the retainer agreement between Friolo and Goldsmith regarding fees awardable under the statute, (v) given that Friolo's claim was for $56,000 and the judgment in her favor was only $11,778, her degree of success was limited; and (vi) in light of that limited success, the award should be reduced further to $16,000 for the trial work.

B. With respect to the claim of $309,951 for appellate and post-trial work:

(1) As to the first appeal ($54,820), 15 hours for conducting a moot court and 23 of the 63 hours spent on writing the brief were excessive, resulting in a reduction of $9,828;

(2) As to the first remand ($30,931), four hours for consulting with outside counsel and 37 hours of the time spent on preparing the fee petition were unreasonable, resulting in a $14,391 reduction;

(3) As to the first appeal to the Court of Special Appeals ($57,931), eight hours of moot court time and 24 of the 98 hours for legal research and brief writing were unnecessary and unreasonable, resulting in a reduction of $10,783;

(4) As to the second appeal ($75,698), 50 hours claimed for preparing for oral argument and 149 hours spent on legal research were excessive, resulting in a reduction of $35,254;

(5) As to the remand after the second appeal ($90,477), 55 hours for preparing a fourth motion for fees, 11 hours opposing Judge Dugan's order that the master's fees be assessed equally against the parties, and 83 hours for responding to an opposition by Frankel to Friolo's fifth motion for attorneys' fees were excessive, resulting in a reduction of $18,636.

The net effect of Judge Rowan's analysis and conclusions was an aggregate recommended reduction in the $309,951 sought for appellate work to $211,736, less a further reduction of $2,277 for costs that Friolo had prepaid, which produced a

recommended net award for fees and costs of $209,459. Judge Rowan submitted a motion for award of fees for his 50.5 hours of service as master of $15,150, to be shared equally by the parties. Once again, neither party was happy, and so both filed exceptions.

That brought the matter back before Judge Dugan, who, after listening to counsel, announced his findings from the bench extemporaneously.[6] He noted at the outset of his remarks that, although great deference was to be paid to the finding of facts by a master, Judge Rowan made his findings solely on the basis of the bills submitted; he did not hear testimony and thus had no ability to make credibility determinations.[7] As we shall recount, he found Judge Rowan entirely too generous and ended up awarding Friolo only $5,000 in attorneys' fees and $2,277 in costs. To make matters worse, for Friolo, he ordered her to pay one-half of the $15,150 fee to Judge Rowan.

The relevant findings by Judge Dugan were as follows:

(1) He found the applicable hourly rates, for purposes of the initial lodestar analysis, to be those stated in the retainer agreement between Friolo and Goldsmith – $295/hour for him and $200 for his associates – rather than the rates stipulated by counsel ($351 for Goldsmith and $238 or $208 for the associates).

---

[6] We have, on occasion, urged trial judges not to do that when dealing with multiple or complex issues unless they have prepared, in advance, a rather detailed outline or checklist of what they want to say. Judge Dugan's oral ruling occupies 69 pages of transcript.

[7] It does not appear that Judge Dugan heard any testimony in the proceeding either. He did, however, hear argument from counsel and did, therefore, have some opportunity to observe the demeanor of the attorneys, in particular Goldsmith, whose bills were at issue.

(2) With respect to hours:

(i) For pleading and preparation, Judge Rowan had allowed 29 hours; Judge Dugan allowed only three, on the ground that eight of the ten counts in the complaint were dismissed and never went to the jury;

(ii) For written discovery, Judge Rowan had allowed 19 hours; Judge Dugan allowed only two;

(iii) For depositions, Judge Rowan had allowed 30 hours; Judge Dugan allowed only five, disallowing preparation time and time relevant to the abandoned claims;

(iv) For trial preparation, Judge Rowan had allowed 100 hours; Judge Dugan allowed only 16, observing that this was a simple case and that much of the alleged preparation time was for interoffice memos and mock trials, which were unnecessary;

(v) For trial, Judge Dugan allowed the 16 hours it actually took to try the case over a two-day period;

(vi) For post-trial, Judge Rowan allowed 13 hours; Judge Dugan allowed nothing, observing that he found no basis for allowing almost as much time for post-trial and for trying the case; and

(vii) For preparing the fee petition, Judge Rowan allowed 51 hours; Judge Dugan allowed three, observing that, if Goldsmith had been keeping time records contemporaneously, it should not have taken more than three hours to prepare a fee petition.

The end result of Judge Dugan's allowances was a fee for trial work of $13,580. He

then determined that, as 58 percent of the $11,778 judgment was for unpaid bonuses for which, in the absence of a finding of no bona fide dispute, attorneys' fees are not permitted, the net lodestar amount of $13,580 should be reduced proportionately, which brought the net amount to $5,704. In light of the overall limited success – the fact that the initial claims were overstated – and language in the retainer agreement, he reduced that amount further to $5,000.

Turning his attention then to the appellate proceedings, Judge Dugan observed first that there was nothing in the retainer agreement regarding an appeal and expressed his belief that the real objective of the first appeal was not to establish the lodestar approach as the controlling basis for determining a proper fee but rather to get the appellate court to approve the $69,637 fee requested by Friolo, which the appeal did not achieve. Indeed, he recounted that, in the first appeal this Court had declined to regard the fee awarded by Judge Beard ($4,711) as unreasonable in amount and had indicated that the $69,637 fee requested was unreasonable, a view shared by the Court of Special Appeals in the second appeal. He also commented that most of the research regarding the applicability of the lodestar approach had been done at the trial level in an effort to persuade Judge Beard to adopt that approach. Accordingly, he allowed nothing for the appellate work.

Friolo appealed, for the third time, complaining that Judge Dugan improperly used the hourly rates in the retainer agreement rather than those stipulated as applicable by the parties, that he erred in assessing Friolo's degree of success both at trial and on appeal, and

that he erred in allowing nothing for the appellate work. The Court of Special Appeals found merit in some of those arguments. It concluded that Judge Dugan erred (1) in not applying the stipulated hourly rate, (2) in suggesting that limits on client liability for fees in a retainer agreement make fee awards exceeding those limits unreasonable, and (3) in using the size of the underlying judgment as determinant of the time necessary to achieve that judgment. *See Friolo v. Frankel*, 201 Md. App. 79, 110, 116-17, 119, 28 A.3d 79, 752, 771, 774-75, 776 (2011).

Had the intermediate appellate court stopped there and entered its judgment in accordance with those conclusions, the case would not be here (not because the parties would have acquiesced but because, by denying *certiorari*, we would have administered a merciful *coup de grace* to this litigation). What brings it here is the Court of Special Appeals's invention and application of an unprecedented mathematical formula for determining how attorneys' fees *in this case only* should be calculated – one based on the arithmetic relationship among the amount of the claim(s), settlement demands and offers, and ultimate judgment. This analysis was in the context of determining, in part, the plaintiff's degree of success, but more in assessing among the parties shares of responsibility for bringing and prolonging the litigation.

We shall comment on this analysis in the Discussion part of this Opinion. Suffice it to say here that, based on its formula, the Court of Special Appeals determined that a proper fee would be $8,356 for the trial stage of the litigation, $10,289 for appellate work in the

first appeal, and $26,395 for appellate work in the second appeal (to the Court of Special Appeals and this Court), for a total of $45,041. Applying its formula to the fees awarded to the master, the Court of Special Appeals concluded that 88 percent of those fees should be assessed against Friolo. Its ultimate judgment was for $45,041 in favor of Friolo and against Frankel, $13,332 in favor of Judge Rowan and against Friolo, and $1,818 in favor of Judge Rowan and against Frankel.

Neither side was happy with the Court of Special Appeals's decision. Friolo believes that Goldsmith is entitled to the entire $388,129 claimed in the sixth supplement to the fee request and that the Court of Special Appeals erred in punishing her for not accepting the wholly inadequate $2,500 (or $3,000) settlement offer from Frankel, in reducing fees for appellate work that produced a successful result, in reducing fees pursuant to its newly invented mathematical formula, and in requiring that she pay 88 percent of Judge Rowan's master's fee. Frankel complains that the intermediate appellate court erred in failing to affirm Judge Dugan's award. We granted their cross-petitions.

Following that action, Frankel filed personal bankruptcy in the U.S. Bankruptcy Court for the District of Maryland which, on Friolo's motion, lifted the automatic stay in order to permit this appeal to continue. It thus appears possible, if not likely, that, whatever we decide, there will be further litigation in the Federal arena.

## DISCUSSION

This case presents the judicial equivalent of the perfect storm – grossly inflated demands by plaintiff's counsel, a scorched earth policy by defense counsel, and courts that failed to follow the directions laid out by this Court in our two earlier Opinions. This simple case, which has been in litigation for more than 14 years, should have ended years ago. Instead, we have the spectacle of a demand for attorneys' fees of nearly $400,000 (without regard to fees that surely will be claimed for this appeal) to win a judgment of less than $12,000 – a judgment that was paid more than eleven years ago. It represents, as much as any case can, the antithesis of Justice Lewis Powell's urging in *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S. Ct. 1933, 1941, 76 L. Ed.2d 40, 53 (1983) that "[a] request for attorney's fees should not result in a second major litigation."

In our first Opinion, *Friolo v. Frankel, supra*, 373 Md. 501, 819 A.2d 354, we made clear that:

(1) The lodestar approach, with its adjustments, is the presumptively appropriate methodology to be used under the Wage and Hour and the Wage Payment laws. *Id.* at 529. 819 A2d at 371.

(2) The starting point for determining a reasonable fee under the lodestar approach is to multiply "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* at 523, 819 A.2d at 367. This requires the judge, using his/her knowledge and experience, to determine (i) how many of the hours claimed, in light of the novelty and difficulty of the issues, were reasonably expended in the

litigation, excluding those that are excessive, redundant, or otherwise unnecessary, and (ii) what a reasonable hourly rate would be for the services provided. In both regards, we said, the court should consider the 12 factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), some of which pertain to the value of the work and some to the reasonableness of the hourly rate, but which mirror criteria set forth in Rule 1.5 of the Maryland Rules of Professional Conduct that govern the reasonableness of fees that an attorney may charge to the attorney's own client.

(3) The product of that multiplication may be adjusted upward or downward based on the results obtained – the degree of success and the level of success. With respect to the degree of success, if the plaintiff failed to prevail on claims that were unrelated to the claims on which he or she succeeded, work done on the unsuccessful claims ordinarily cannot be deemed to have been expended in pursuit of the successful claim. That may be ameliorated by the level of success, however. If the attorney achieved "exceptional success" some of those hours expended on unsuccessful claims may be counted and, indeed, the award may be enhanced. On the other hand, if the plaintiff achieved only partial or limited success, hours times rate may turn out to be excessive.

In addition to setting out these guidelines, we observed that, on remand, the court (i) would need to take account of the fact that, with respect to the bonuses, an award of attorneys' fees is permitted only if the non-payment was not result of a bona fide dispute and the jury failed to make any finding in that regard, (ii) would need to determine whether the

unsuccessful claims were truly related to the successful ones; and (iii) should consider and give appropriate weight to any fee agreement between Friolo and Goldsmith and to the provisions of Rule 1.5 of the Maryland Rules of Professional Conduct.

(4) Importantly, we observed that one of the benefits of the lodestar approach is that it allows the court to make appropriate findings "so that the parties and any reviewing appellate court can follow the reasoning and test the validity of the findings." 373 Md. at 529, 819 A.2d at 371.

As already noted, we observed in our Opinion that Friolo's claim for $55,012, for the pre-trial and trial work, would be unreasonable even under a lodestar approach, *Id.* at 512, 819 A.2d at 361, and made clear that we were not suggesting that the $4,712 fee actually awarded, though by the wrong methodology, was necessarily unreasonable, *Id*. at 529, 819 A.2d at 371.

So what happened on remand? Friolo filed a third supplemental request seeking the same $69,637 she had sought earlier for 274 hours of pre-trial, trial, and post-trial work prior to the appeal (which we had indicated would be unreasonable even under lodestar), and $58,172 for appellate work, the latter based on 205 hours at rates ranging from $325/hour for Goldsmith to $175/hour for associates. The court, though professing to apply the lodestar approach, awarded $65,348, based solely on 194.4 hours of work times hourly rates of $295 for Goldsmith and $200 for the associates. Although the court stated in its order that it had considered the complexity of the litigation, Friolo's "success rate," and the uniqueness

of the issues, the fee award was nothing more than a straight multiplication of hours times rate, with no explanation of how the hours were calculated or whether the award included any time for the appellate work. Hence, the second appeal.

As we observed, the Court of Special Appeals correctly found that the record did not support a conclusion that the Circuit Court had actually applied a modified lodestar approach in conformance with our explicit direction that it do so, but incorrectly held that, because the underlying judgment in favor of Friolo was not in issue in the first appeal, no fees were awardable for pursuing that appeal. We agreed with the Court of Special Appeals that the case had to be remanded again to the Circuit Court to do what we had told it to do the first time, but directed that, on remand, the court should consider what, if any, fees should be awarded for the appellate effort. Judge Dugan ultimately did that, although, in the end, he decided not to award any fees for the appellate work and awarded only $5,000 total (plus costs). Hence, the third appeal.

In the Court of Special Appeals, Friolo made four complaints about Judge Dugan's decision: (1) that he erroneously applied the hourly rates stated in the Friolo-Goldsmith retainer agreement rather than the composite rates stipulated by the parties; (2) that he gave undue weight to what a reasonable fee would have been under Rule 1.5 of the Rules of Professional Conduct; (3) that he erred in considering Friolo's liability to Goldsmith under the retainer agreement; and (4) that, in light of her success at trial and on appeal, Judge Dugan erred in finding her fee request unreasonable. The intermediate appellate court found

that all four of those complaints had merit. Instead of remanding the case with instructions to correct those errors in some way, or doing so itself, however, the court proceeded to devise an entirely different method for determining a reasonable fee – one that we shall conclude is not only internally flawed but inconsistent with our pronouncements.

The court began by regarding the case as involving "the single question" of Friolo's "degree of success." That, alone, was incorrect. Although degree of success is certainly an important element, it is not the only consideration. Proceeding from that premise, however, the court then regarded the case, disparagingly, as merely resolving "a minor dispute between a physician and his former employee" and not affecting "a broad base of potential litigants." 201 Md. App. at 118, 28 A.3d at 776. When compared to issues of world peace, that may well be so, but the wrongful withholding of nearly $12,000 in wages, to the employee who may need those wages for basic sustenance, that is not "a minor dispute," and pursuing an action to clarify and enforce the commands of the Wage and Hour and Wage Payment laws does, indeed, "affect a broad base of potential litigants."

The court then criticized the trial court for dealing with the discrepancy between Friolo's claims and the jury's award by "estimating the amount of time it believed was appropriate to obtain a judgment of $11,778.85," which the appellate court concluded "was not the correct approach." *Id.* at 119, 28 A.3d at 776. We disagree with that as well. In cases where the plaintiff achieves other form of significant relief – or even voluntary behavior modification on the part of the defendant as a result of the lawsuit -- the court must

- 21 -

look beyond just the correlation between time spent on the case as a whole and any monetary relief. We pointed that out in our first Opinion in this case, *Friolo v. Frankel, supra*, 373 Md. at 522-23, 819 A.2d at 367-68, citing the situation in *Hensley v. Eckerhart, supra*, 461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed.2d 40 as an example. In this case, the only relief obtained was the monetary judgment, and it was not only appropriate, but necessary, for the court to look at that in determining the level and degree of Friolo's success. That analysis measures the productivity of the time expended.

Continuing on its course, the appellate court regarded its proper focus to be determining the degree to which each party was responsible for the continuing course of the litigation and ended up assessing 88 percent of that responsibility to Friolo. It did so by comparing Friolo's demand at trial with Frankel's one settlement offer of $3,000 (which was actually $2,500). Litigation, it said, cannot be regarded as a success if it results in no recovery beyond what the defendant was willing to admit. The court attempted to illustrate that principle as follows:

> "If a plaintiff demands $100,000.00 while the defendant offers to settle for $50,000.00, only to have the jury award the settlement of $50,000.00, the value of that litigation is the same as if the plaintiff had demanded $50,000.00, only to be offered and awarded $0.00. In either case, the value of the litigation is zero because the proper 'baseline' to measure success is the defendant's willingness to pay, which is the approach taken by Federal Rule of Civil Procedure 68."

- 22 -

*Id*. at 121, 28 A.3d at 777.[8]

The court recognized that a defendant's settlement offer can fall below the jury's verdict, thereby justifying the litigation, but then reached the odd conclusion that if "a plaintiff demands $100,000.00 and obtains a judgment of $50,000.00 against a defendant who never offered any settlement – which is to say the defendant 'offered'$0.00 – both parties will have contributed equally to litigation costs." *Id*. at 122, 28 A.3d at 778. The end result of this analysis was the conclusion that, where the plaintiff seeks only monetary damages, "the relative contribution of each party to 'causing' litigation can be expressed with straightforward arithmetic by multiplying the lodestar amount by a fraction that is the difference between the judgment and the settlement offer, divided by the difference between the claims and the settlement offer." *Id*. at 123, 25 A.3d at 778. It produced this formula:

"Amount of Plaintiff's Claims" minus "Amount of Judgment"
divided by
"Amount of Plaintiff's Claims" minus "Amount of Defendant's Settlement Offer"

Applying that formula in light of its findings that Friolo demanded $78,146 at trial, Frankel offered $3,000, and Friolo was awarded a judgment of $11,778.85, the Court of Special Appeals concluded that Friolo's demand exceeded the judgment by $66,385.15, while Frankel's offer to settle fell short by $8,778.85, that out of the $75,164 difference

---

[8] Fed. Rule Civ. Pr. 68 is an "offer of judgment" Rule. Section (d) provides that if such an offer is made pursuant to the Rule and rejected, and the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made. Maryland has not adopted such a Rule. It was considered many years ago by the Court's Standing Committee on Rules of Practice and Procedure and rejected.

between the two parties, Friolo was responsible for 88 percent, and that, as a result, her claim for $69,637.50 should be reduced by 88 percent. For whatever reason, the court decided that it did "not intend for our formulaic approach in this particular case to stand as a universal and exclusive rule that determines a plaintiff's 'degree of success' to the exclusion of all other considerations," but it offered no reason, especially in light of its opinion being a reported one, why it should apply in this case but not in others.[9]

We accept the proposition that a party should not be permitted to increase a fee award by prolonging the litigation as a result of making unreasonable settlement demands or rejecting reasonable settlement offers. *See Lohman v. Duryea Borough*, 574 F.3d 163 (3rd Cir. 2009); *Vocca v. Playboy Hotel of Chicago*, 686 F.2d 605 (7th Cir. 1982); *Connolly v. National School Bus Service*, 177 F.3d 593 (7th Cir. 1999); *Parke v. First Reliance Standard Life Ins. Co.*, 368 F.3d 999 (8th Cir. 2004); *Ingram v. Oroujian*, 647 F.3d 925 (9th Cir, 2011); *E.E.O.C. v. Nutri-System, Inc.*, 685 F. Supp. 568 (E.D. Va. 1988). Indeed, at least three of the Federal appellate courts have held that it is not an abuse of discretion for a trial court to deny a request for fees altogether when the amount of the request "is so exorbitant as to shock the conscience of the court" or "so exorbitant as to constitute an abuse of the process of the court asked to make the award." *See Fair Housing Counsel of Greater Washington v. Landow*, 999 F.2d 92 (4th Cir. 1993); *Budget Rent-A-Car System, Inc. v. Consolidated*

---

[9] *See* Md. Rule 8-605.1(a): "The Court of Special Appeals shall designate for reporting only those opinions that are of substantial interest as precedents."

*Equity LLC*, 428 F.3d 717 (7th Cir. 2005); *Lewis v. Kendrick*, 944 F.2d 949 (1st Cir. 1991).

None of those cases in any way support what the Court of Special Appeals did in this case, however.[10]

In this case, early in the litigation, Friolo offered to settle for $36,000, at a time when the prospect of treble damages for the unpaid bonuses (which, in light of the judgment for $6,841 on that claim, could have produced a judgment on that claim alone of $20,523) was still viable. No counter-offer was made by Frankel until later, when it offered $2,500 – an offer he never increased. This, alone, demonstrates the fallacy in the Court of Special Appeals's approach. It was not unreasonable at all for Friolo to reject the $2,500 offer when it finally was made. Unless she was willing simply to abandon her case, she had no alternative but to pursue the litigation, with attorneys' fees accumulating as the case dragged on.

Frankel, on the other hand, never, at any time during this litigation, made an offer that could be regarded as reasonable – not prior to trial, not after Friolo won her judgment of $11,778, not pending the appeal which, on the legal issue, she won, not on remand when the

_____

[10] In *Lohman*, the plaintiff rejected three settlement offers after trial began, including one for $75,000 and was awarded only $12,205; the court reduced the lodestar fee request from $62,986 to $30,000 based on limited success. In *Connolly*, the plaintiff rejected settlement offers of $12,500, $20,000, and $25,000 only to accept $10,000 on the eve of trial. In *Ingram*, after demanding $425,000 the plaintiff settled for $32,000, having rejected an offer of that amount a month earlier. In *Vocca*, a fee request was denied entirely in light of the refusal of an early settlement amount that was close to the final settlement figure and the insistence on amounts many times that offer.

only issue was the fee, not during the second appeal, which, on the critical issue of fees for appellate work, she also won, and not during the remand after that appeal. To the extent that a court may consider settlement demands and offers in determining the level of ultimate success, it must recognize that this is a dynamic process that can shift as circumstances change – fees accrue as the case proceeds, prospects may increase or diminish as important motions are won or lost, as discovery reveals strengths or weaknesses. Rarely, and certainly not in this case, can it be frozen in time, as was done by the Court of Special Appeals.

This also illustrates the fallacy of the appellate court's notion that, where the plaintiff demands $100,000, the defendant offers nothing, and the plaintiff wins a judgment of $50,000, both are equally at fault for prolonging the litigation. That is not the case. If the defendant offers nothing, the plaintiff has no recourse but to continue the litigation. A court reviewing a fee request is not obliged, of course, to award all that is requested and may consider the extent of recovery in determining what is reasonable, but it would be wrong to halve the request simply on the basis that the plaintiff was equally responsible for prolonging the litigation when no offer was made by the defendant.

We reject the approach adopted by the Court of Special Appeals and hold as follows:

(1) Judge Dugan's conclusion that the $6,841 part of the $11,778 judgment for non-payment of bonuses was not subject to fee-shifting was correct, and, although that does not necessarily require a 58 percent pro rata reduction in the fee request, the pro rata reduction does not constitute an abuse of discretion. The claim for bonuses was not allied

to the $4,937 claim for overtime, which was under a different statute and rested on different evidence.

(2) Judge Dugan's use of the hourly rates provided for in the retainer agreement between the parties, rather than the hourly rates stipulated by the parties, was not an abuse of discretion. It is for the court to determine what hourly rates are reasonable, and, although Judge Dugan could have accepted the rates agreed to by the parties, he was not required to do so.

(3) Judge Dugan's determination as to the reasonable number of hours necessary to complete the trial and immediate post-trial stage does not amount to an abuse of his discretion. He explained in great detail why he believed various blocks of hours spent on various tasks were unnecessary or excessive. Accordingly, Judge Dugan's allowance of $5,000 for trial and immediate post-trial work was not an abuse of discretion. It is consistent with the $4,711 awarded by Judge Beard in the first go-round, which we noted was not unreasonable in amount.

(4) Judge Dugan's direction that the master's fees be split equally between the parties was not an abuse of discretion.[11]

---

[11] Although Judge Dugan had the authority to refer the matter to a special master, it was not a very efficient thing to do. It extended the course of the litigation for nine months, added to the direct cost of the litigation by a master's fee of over $15,000, required Goldsmith's firm to spend additional time litigating the case before Judge Rowan, and ended up with Judge Dugan rejecting nearly all of Judge Rowan's findings and recommendations. Especially now, with new Rules 2-701 through 2-706 in place, judges should be able to resolve these claims themselves, especially in wage dispute cases where the amount of the

(5) Judge Dugan's allowance of nothing for any of the appellate work does amount to an abuse of discretion, for the following reasons:

(a) With respect to the first appeal, Friolo did, in fact, prevail. Goldsmith convinced this Court that the modified lodestar approach was the proper one to apply and that Judge Beard apparently failed to apply that approach. The judgment as to fees was vacated and the case was remanded for the trial court to apply the proper test, with costs of the appeal to be paid by Frankel. Although Frankel asserts that Friolo's real objective was to get an increase in the fees and not really to establish a new principle of law, the facts are that (i) through Goldsmith's efforts an important precedent was set, and (ii) on remand, he was awarded a fee of $65,348 – considerably more than the $4,711 he had been awarded initially. The problem was that it was unclear whether that fee included any appellate time.

This time, there were cross-appeals, Frankel claiming that no fees were awardable for appellate time when the appeal concerns only fees and not the underlying judgment, Friolo arguing to the contrary. That was an important and, in Maryland, an unresolved public issue. As we pointed out in that appeal, *Friolo v. Frankel, supra*, 403 Md. at 458, 942 A.2d at 1251:

> "[The] goal of assuring Maryland employees, who believe they
> have been wronged by their employers, that they will be able to
> obtain legal representation by virtue of a statutory provision that
> ensures that their legal counsel will be compensated reasonably
> is undermined by a test that is not clear with regard to the role

wage claim is likely to be relatively small.

- 28 -

that appellate advocacy plays in the lodestar analysis."

We added that "it is as important to compensate counsel for ensuring that the trial court gets it right, even if to do so requires counsel to appeal, as it is to ensure that counsel is compensated for services rendered at trial" and that "it is a disincentive to the retention of competent counsel in these kinds of cases to deny recovery for successful appellate advocacy, including advocacy that demonstrates trial court error." *Id.* We directed another remand for the Circuit Court, finally, to "get it right" and, as before, assessed the costs of the appeal against the losing party, Frankel.

In denying any fee for appellate time, Judge Dugan acted inconsistently with these pronouncements. It was entirely reasonable for Friolo/Goldsmith to pursue both appeals, which they won and in which they established important precedents. Goldsmith's firm is entitled to an award of fees for the time *reasonably expended* in pursuing those appeals, and we must again direct that the case be remanded for that purpose. On remand, the Circuit Court shall (i) confirm the award of $5,000 for the trial and immediate post-trial time, which we have upheld as reasonable; (ii) confirm the equal division of the master's fees; and (iii) applying the lodestar principles we have enunciated, award a reasonable fee for the appellate effort by multiplying the number of hours reasonably expended by a reasonable hourly rate. We would admonish Friolo and Goldsmith to be mindful of the risks of excessively gilding the lily and suggest to both parties that it is not too late to negotiate a settlement.

JUDGMENT OF COURT OF SPECIAL APPEALS VACATED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REMAND THE CASE TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS IN CONFORMANCE WITH THIS OPINION; COSTS IN THIS COURT AND COURT OF SPECIAL APPEALS TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.